Caledonia,
March,
1837.

WILLIAM MATTOCKS *v.* JOHN STEARNS. & LYDIA STEARNS, his wife.

If the county court admit evidence of notice to the opposite party to produce a deed, before any evidence is given of the existence of the deed, and, the deed not being produced, permit the party to proceed and prove its contents, it is an informal mode of proceeding, but no ground of error. The court below has a discretion in regard to the *order* of introducing testimony.

In the case of a deed of lands, the court will not presume it to have been recorded, or require the opposite party to search the records of the proper office, before resorting to oral evidence of its contents,

If the opposite party, in whose possession a deed is presumed to be, is out of the State, notice to his counsel, to produce the original, is sufficient to warrant the introduction of secondary evidence of its contents.

The husband has such an interest in the freehold estate of the wife, after issue born alive, as may be taken by levy of execution, by his creditors.

This interest is liable to be defeated by a divorce, *a vinculo.*

The mode of levy is by metes and bounds, and to exhaust the interest of the husband, as far as the levy extends.

If the husband remain in possession of the land, after the expiration of six months from the levy, he is a wrong-doer, and may be sued in ejectment.

The wife is not liable to be joined in such suit.

But if she be joined, the plaintiff may amend, on terms, by striking out her name, and take judgment against the husband.

This was an action of ejectment for about seven eighths of an acre of land in the village of Danville.

Plea, severally, not guilty, and issue to the jury. On trial the plaintiffs introduced a deed from Josiah Bellows to Caleb Wheaton, dated, 10th May, 1828, containing the land in question. He also introduced, a levy of execution upon the same land in his favor, against John Stearns, one of the defendants, dated, August 5th, 1834. He then introduced evidence, tending to prove, that Caleb Wheaton was the father of John Stearns' wife, the other defendant, and that he died seized and possessed of the premises sued for, and that his estate was nearly settled and the debts all paid, and that he left a wife and two children living, to wit: Mrs. Stearns and Zalmon Wheaton.

The plaintiff further introduced evidence tending to show, that John Stearns had absconded to Canada, about two years ago,

and a short time before the levy, and that his wife and children lived on and took care of the premises.

The plaintiff then produced two written notices, one to Mrs. Stearns, and one to C. Davis, defendants' counsel, requiring them to produce a deed, from said Zalmon Wheaton to Mrs. Stearns, of the premises, and no deed being produced by defendants, and no copy of any deed being offered by the plaintiff, he offered Zalmon Wheaton as a witness to prove the contents of a deed, executed by him ;. which testimony was objected to by the defendants but was admitted by the court, and said Zalmon was sworn, and testified that he, on the 5th October, 1832, executed a quit claim deed of the premises to his sister, Mrs. Stearns, and that she, at the same time, executed a quit claim deed to the witness of some other real estate left by their father; and that there was no distribution of the real estate among the heirs by decree of the probate court, and that the widow of Caleb Wheaton had relinquished her right of dower, in consideration of a support, guarantied by the witness. Here the plaintiff rested his case. It was admitted the defendants had issue born alive. The defendants requested the court to instruct the jury, that upon this evidence the plaintiff was not entitled to recover against both defendants, or either. But the court instructed the jury, that if they believed the said testimony, the plaintiff was entitled to recover possession of the premises, and costs, against both defendants;—to which decision of the court, in admitting parol evidence, in relation to the deed to Mrs. Stearns, and to the said instructions to the jury, the defendants excepted.

*C. Davis, for defendants.*

Service of the notices to produce, &c. upon Mrs. Stearns, and upon her attorney, did not, under the circumstances, lay a foundation for the admission of secondary evidence, for two reasons—

1st. Because there was no such privity of estate or contract between the plaintiff and her, as to entitle him to call upon her to produce her title deeds, in order that he might, from them, draw some proof of the existence of property in her husband.

2nd. Because these notices were not preceded by any proof that she had a deed from her brother. This was necessary by all rules of proceeding. 1 Stark. Ev. 359.

The next question is, whether the usufructuary interest, to which the husband becomes entitled in his wife's lands,

Caledonia,
March,
1837.

Mattocks
v.
Stearns and
wife.

Cledonaia,
March,
1837.

Mattocks
v.
Stearns and
wife

can be set off on execution, in satisfaction of his debts? If there be any authority for so doing, it must be derived from our statute, for the right to appropriate the real estate of the debtor, for this purpose, of whatever description, has no other source.

The act concerning levying executions, Sec. 3, provides, " that all houses, lands and tenements, belonging to any person, " in his or her own right in fee, *or for his own life or the life* " *of another*, paying no rents for the same, shall stand charged, " with all the just debts and demands owing by such person." &c.

This is the only clause to be found in our statute, which affects the question ; and yet, it is obvious, that the interest, which John Stearns had in his wife's lands, as described in the levy of plaintiff's execution, is not literally and in terms comprehended by it. It is not an interest belonging to him necessarily, for his own life, for it ceases upon the death of the wife ; nor for the life of the wife, because it ceases upon the death of the husband. It is an interest limited to the duration of the coverture, resulting from it, and ending with it ; and, though it is termed a freehold, it is not strictly a life estate. In one event, it may continue in the husband during his life, although he survives the wife, that is, when the wife had issue by him, capable of inheriting the land. But in this case, it assumes a new name—tenancy by the curtesy—has new qualities imparted to it, and is, with perfect propriety, termed a life estate. This change does not take place till after the birth of issue and death of the wife. Subsequent to these events, we do not deny that his interest comes within the purview of the statute, and may be set off on execution.

The continuance of the usufructuary interest of the husband, during the life of either party, depends upon another contingency, and that is, a divorce *a vinculo*. The husband's interest in his wife's lands ceases, absolutely, upon such a divorce, whether issue has been born or not ; for this does not, like the death of the wife, constitute him tenant by the curtesy, nor does he become such after her death, when a divorce has occurred. Our statute of divorces, it is true, Sec. 4, authorizes the supreme court to restore to the wife all or any part of her lands, as if her lands, like her goods, were vested, absolutely, in her husband, by the marriage. Blackstone does not enumerate this, as an estate for life, yet, tenancy by curtesy he does. 2 Bl. Com. 126,

127, 128. Dane agrees with Black. Ch. 130. Art. 3, *passim.*

But conceding that the husband's usufruct may properly be termed a life estate, because it may last for life, it is to be observed, that our statute does not subject all life estates to levy on execution for debt, but only two particular descriptions of them. Could an estate *de viduitate,* or an estate, granted till a certain sum be raised therefrom, both of which may possibly subsist for life, be comprehended in the act? We think not. We apprehend the true construction will confine it to such estates as are created by grant, to endure for the life of the grantee, or some other person, or such as the law raises, having the same definite duration, as tenancy by curtesy and dower. This is rather to be presumed, as the principal elementary writers, as Blackstone, Dane, Kent, &c. do not include this in their enumeration of life estates.

It is true, the two latter say, it may be set off or sold on execution; but they speak in reference to the laws of other states. 2 Kent's Com. 110. 1 Dane 342. Roper's Hus. & wife. 1, 3, 136, 54. Reeve's D. R. 27. 1 Swift, 26.

Neither of these two last writers intimate that it can be sold or set off.

To ascertain the value of the estate, the appraisers have not merely the common difficulty of calculating the probable duration of a single life, which, by the aid of Wigglesworth's tables of lives, or some others, might afford a tolerable approach to accuracy; but they must calculate the joint lives of husband and wife; and, if before issue born, the probability of such an event must constitute an element in the calculation,—a difficult point, we should think, to subject to mathematical precision.

In addition to all this, the possibility of absence beyond seas, or elsewhere, for seven years without tidings, and the probability of a divorce for some of the numerous causes indicated by our statute, must be taken into account. And how can it be possible, from elements like these, to arrive at any tolerable approximation to a just appraisal?

We infer, then, that it never could have been the intention of the legislature, to subject an interest, so uncertain in its duration, and liable to so many contingencies, to be extended upon execution.

Courts of equity go great lengths in preserving to the wife and

Caledonia,
March,
1837.

Mattocks
"
Stearns and
wife.

her heirs, at her decease, her separate property,—not merely her freehold estates, but her chattels real. They regard any charge upon her lands, for the purpose of raising money for his benefit, as giving her the character of surety to him, and her estate entitled to exoneration out of his assets.

Bonds, notes and other choses in action, created by a sale of her separate estate, will still be treated as hers, so far as can be done, without interfering with his acknowledged power of appropriation, during coverture. Her right in them survives, upon his death, even though he may have been a party to them. This court has emphatically expressed their approbation of these principles, and evinced a determination to apply the liberal doctrines of courts of equity, in preserving to the wife her separate property, to cases at law, so far as they can do so consistently with the settled forms and modes of proceeding in courts of law. *Richardson* v. *Daggett*, 4 Vt. Rep. 336. 2 Kent's Com. 116, 120. 1 Rop. H. & wife, Ch. 2, *passim*. *Kenny* v. *Udall*, 3 Cowen's Rep. 590. *Compton* v. *Collinson*, 1 H. Bl. 334.

If, however, the court should be of the opinion, that this species of estate may be set off on execution, and that it was so legally done, in the present case, so as to give the plaintiff a right to the possession, we then contend, that this action should not have included the wife ; that the husband alone, was liable. On this point, we think the authorities are too decisive to admit of serious controversy. Reeve's D. R. 27, 130, 131, 133, 135. 2 Kent's Com. 111. *Bobb and wife* v. *Perly*, 1 Greenleaf's Rep. 1 Dane's Ab. 332, 341, 343. 5 do. 645, 647.

Whatever rights creditors may have, or not have, in the husband's interest in his wife's lands, it is perfectly clear, from the authorities cited, that, during coverture, he has the absolute control of it, and alone can encumber it, assign it or lease it. In case of trespass to the growing crops, he alone can sue. Upon any covenants by lessee, as for non-payment of rent, the action can only be sustained in his name. If he dies, having rents due, or claims for trespasses committed, no remedy results to the widow. Both the right and the remedy pass to his executor. His title is as full and complete as it is to her personal chattels, or to her real chattels, when reduced to possession. He is under no necessity of joining his wife in the action, although he may do so, as in other cases, when she or her property may be the meritorious cause of action.

She having no interest whatever, until the determination of his use, by the dissolution of the marriage, no action can be maintained against her jointly with her husband, and none sur- vives against her. She must be made a defendant in an action affecting her inheritance. In the case at bar, the plaintiff's claim is consistent with, and, indeed, is founded upon her estate. He sets up no title adverse to hers; the event, either way, can settle nothing as to her estate; it is but a contest between the husband and his creditor, for the possession of a temporary interest, created by operation of law, out of her lands, and which, however it may terminate, leaves her estate, present and future, wholly unaffected. If the creditor fail, the husband, as before, has the exclusive possession and enjoyment, with all his rights of alienation; if he succeed, the husband's interest is simply transferred to him, and, in either case, if she survive, or upon a divorce, she is instantly reinstated in the full enjoyment of her lands, as if no marriage had intervened. There is, therefore, no reason for making the wife a party in this suit, and no authority can be found to justify it. Nor is there any ground for the position, that she has done any act, personally, that can subject her to responsibility. She has, with her children, continued to reside upon the premises, since her husband's abandonment, as she did before. This occupation is the husband's occupation, as much as that of the minor children.

The wife having been improperly joined in this case, we are inclined to think the jury should have been instructed, that plaintiff could not recover against John Stearns, if even otherwise entitled to recover. There is no doubt but in torts, which may be joint or several in their nature, and when the action does not involve a joint contract, or proceed upon some supposed unity of title or vicariousness of character in the defendants, a recovery may be had against one, though others may be acquitted. But there are exceptions, and the present, we contend, is one. An eviction is stated by husband and wife, which could only be proved by showing some act of the former, in reference to, or affecting the estate of the latter; for, in ordinary trespasses committed by both in company, the law imputes the act to him only, and exonerates her; and, on failure to make out any such case, can the plaintiff choose his ground, and proceed upon the act of the husband alone? *Weall v. King et al.* 12 East. 452.

1 Chitt. Pl. 74—5.  *Sumner* v. *Tileston et al.* 4 Pick. Reports, 308.

Mattocks
*v.*
Stearns and
wife.        If the court should be of opinion, that nothing, hitherto urged, is sufficient to prevent the plaintiff from having judgment against both, or one of these defendants, we have still another objection, and that is, that by virtue of our statute, when a creditor has extended his execution upon the land of his debtor, in the manner prescribed, and when the latter has omitted to avail himself of his right to redeem the premises set off, the former is, by operation of law, invested with full title and seizin of the same. The statute declares he shall have as full and ample power to enter, as though seizin had been delivered by the officer. If seizin had been formally delivered by an officer, under a writ of possession, could ejectment be maintained against the former tenant without a fresh act of eviction? Surely not. In this action, the plainriff seeks to recover that, of which he is already in full possession. It presupposes the plaintiff to be out of possession, and the other party in, when in truth, in contemplation of law, the reverse is the case, in both respects. If, in point of fact, in such case, the former tenant intermeddles with the premises, he may be liable in that species of action of trespass, which supposes the plaintiff to be in possession, and the opposite party to be depredating upon that possession. This objection, if well founded, may be insisted upon by both or either of the defendants.

*William Mattocks, pro se.*

The levy being legal in point of form, and the land not redeemed and defendant in possession, the case presents two questions. First, is the wife properly made defendant? Second, is Stearns' life estate, under our statute, liable to be set off to pay his debts?

I. Both must be sued, when both are in possession, the husband claiming in right of his wife. Reeve's D. R. 135—6. Bro. 67. Roll. Abr. 660.

Holding over, after the title becomes absolute in the levying creditor, is, by statute, trespass, for which ejectment lies.

It is a general rule, that all persons in interest be made parties, and all, who participate in the tort, may or must be made defendants. 1 Chitty, 2, 65.

The wife, in this case, is interested, claiming that plaintiff takes nothing by the levy, and that she cannot be ousted.

In torts, the wife, if participating, may be joined, if interested in

Caledonia,
*March*,
1837.

Mattocks
*v.*
Stearns and
wife.

the trespass, unless under the actual or presumed coercion of the husband. Reeve's D. R. 72, 74, 135—6. 1 Chitty, 65, 81. 1 Swift's Digest, 28, 29. 1 Selwyn's N. P. 220. 2 id. 702. 1 Swift's System, 199, 200.

Stearns was in Canada before and ever since the levy, which does away all presumption of coercion. 2 Starkie's Ev. 704,

Since the husband is tenant with the wife, in possession of her tenement, they will be jointly liable for the rent reserved, as they would be upon an estate granted to both during coverture. Hammond on parties, 206. So, for waste, or for not repairing division fence, id. 207.

In sueing on liabilities by both, during coverture, she must be joined. Id. 214, 240.

II. By marriage the husband acquires a freehold estate during their joint lives, in such freehold estate of inheritance, as the wife was seized of at *that time*, or may come to her during coverture—And, if tenant by curtesy, during his life. 1 Roper, 3, 5. Reeve's D. R., 28. 4 Kent's Com. 27, 28. 2 Black. Com. 128, 433. 1 Swift's D. 28. 1 Cruise's Dig. 107.

He has her chattels real by survivorship. Reeve's D. R. 22, 24. 2 Black. Com. 435.

He may charge her estate with his debts, during their joint lives, and, if tenant by the curtesy, during *his* life. 1 Roper, 136. 2 Kent's Com. 112, 113. Reeve's D. R., 22, 26, 27.

Her separate property is liable for his debts. 2 Roper, 138, 9.

He may sell her chattels real, or dispose of them by will. 2 Black. Com. 434. 2 Kent's Com. 109, 111, 142. 1 Roper, 166—7—8, 181. 1 Cruise's Dig. 178.

He may assign a judgment or *elegit*, sued out by her before or after marriage. 1 Roper, 174 to 180.

Husband surviving wife has her mortgage right. Reeve's D. R., 30. Roper, 5.

In case of his bankruptcy, assignees may take the whole annual income of all her lands, making allowance to her. 1 Roper, 276.

In short, he has the entire control of her property. 1 Swift's Dig. 18, 26.

This very estate can be sold. 2 Kent's Com. 111. 1 Dane's Abr. 342.

Thus it appears that the husband has a freehold estate, for

Caledonia,
*March,*
1837.

Mattocks
*v.*
Stearns and
wife.

their joint lives, and if tenant by curtesy, (which Stearns is, in this case,) in the wife's land, during his life, has the entire control of it, and it follows, as a natural and legal consequence, in countries where provision is made for creditors to take debtors' lands for debts, by sale or appraisal, that this kind of title may as well be taken, as title to land, owned in fee by debtors.

With respect to the propriety of proving the contents of the deed, from Wheaton to Mrs. Stearns, by parol, after notice to produce it, and no excuse for not producing it, it is too clear to admit of argument.

It is settled law, that when a paper is in the hands of the defendant, after notice to produce it, the contents may be proved.

The opinion of the court was delivered by

REDFIELD, J. It is first to be inquired, whether the county court committed an error in admitting parol proof of the contents of the deed from Zalmon Wheaton to defendant, Lydia Stearns. Whether the existence of the deed should have been first proved, and then notice to produce the original shown, in order to lay the foundation for secondary evidence of the contents of the deed, is not now very material; as it is a mere question as to the *modus operandi.* Most unquestionably, this would have been more in accordance with the received forms of proceeding, and such, no doubt, was the order of proceeding in fact, in the court below, but in stating the case, that order is reversed, and the notices to produce the deed are shown before the existence of the deed itself is proved. This course might sometimes happen from its being conceded on all hands, that some such instrument did once exist. But, in either case, as no question, as to the *order* of introducing the evidence in the court below, was made, and the *existence,* as well as the contents of the deed, was shown, it only remains to determine whether, from the whole case, such proof was properly admitted.

The deed was executed to the wife. It is presumed to continue in her possession, or that of her husband, unless the contrary be shown. As it is only optional with the party, whether he will record his deed, we cannot presume any deed to have been recorded. If not recorded, it could not be proved by an office copy from the town clerk, nor would it be in the plaintiff's power to produce any copy of the deed. He must, of course, resort to mere oral evidence of the contents, unless he could procure the original deed. This he should do, if in his power.

He must make all reasonable efforts to procure it. As he has not the custody of the paper, nor power to compel the opposite party, in whose possession it is, to surrender it, he can only re- quest them so to do, and this he must do, and in reasonable time, to permit them to produce it, if they see fit. If they refuse to produce the original, he may then resort to the best evidence in his power, which, in this case, it has been seen, was produced, *i. e.* oral evidence of the contents of the instrument. The only remaining doubt, then, rests upon the character of the request or notice to produce the deed.

We think this was sufficient. The party, wishing to prove a paper in the possession of his antagonist, cannot be required to follow him to the world's end, to request the production of the original. All that is or can be required, is reasonable notice. This, we think, was given in the present case. If the party was not within the State, the notice to the attorney was all that could be required.

The freehold title of the wife being made out, and the plaintiff's levy being admitted to be formal, and it being also admitted, that the defendants had issue born alive, it only remains to inquire whether the defendant, John Stearns, had such an estate in the land, as was liable to be levied upon by his creditors.

The statute provides that, " any estate, held by the debtor in his own right in fee, or for his own life, or the life of another, paying no rents therefor," shall be subject to be levied upon.

We see no difficulty in considering this an estate, which the debtor held in *his own right*. The title was, indeed, derived through the right of his wife, but, by virtue of the marriage, he, as husband, acquires certain rights, among which, the use of the freehold estate of inheritance of the wife, during the coverture, is one. After issue born alive, this estate is enlarged and extends not only during the coverture, but till the death of the husband, except in one event, which will be named hereafter. This, in England, after the death of the wife, was denominated an estate by the curtesy, but is strictly an estate, which the husband holds in his own right, whether before or after the death of the wife. He may bring trespass or ejectment in his own name, for any injury to the usufruct during the continuance of his estate.

The next inquiry is, whether this is *an estate for the life of the debtor*. It is undoubtedly true, that this estate might be

Caledonia,
*March*,
1837.

Mattocks
*v*
Stearns and
wife.

determined by a divorce, *a vinculo*, before the death of either husband or wife. But this is a contingency of so remote expectation, as not to enter into the ordinary calculations of the duration of the relation of married life. It is one of those extreme cases, which, like earthquakes and tempests in the natural world, or like public executions in the history of individual existence, do, indeed, sometimes occur, but which no one feels bound to expect or to provide against.

This, then, is an estate for the life of the debtor, depending upon this remote contingency, which no honest or prudent man could anticipate in his own case, and which the law cannot regard until it occurs. And should the contingency happen, and thus the estate of the levying creditor be determined, it is no detriment to the debtor, nor has he any just cause of complaint. His debt is paid, and the loss and risk, if any, fall upon the creditor.

But if this were a contingency still less remote, it would not change the character of the estate.

An estate to a woman *durante viduitate*, or *dum sola*, or to a man, *so long as he shall dwell in a particular house*, are all estates for life, although each particular class of those estates, is liable to be determined any hour, and that during the life time of the person, by the term of whose existence the estate is otherwise to be measured. 1 Cruise's Digest, 77. 1 Institutes, 42, a.

This mode of levy upon the entire estate of the debtor, by appraisal to the extent of the metes and bounds, by which the levy is described, is the only mode ever practised in this State, and the only one, we think, which is consistent with the statute. In some of the States, the creditors who levies upon the husband's estate, in the lands of the wife, is put by the officer in the receipt of the yearly issues, until the debt shall be paid. Such has not been the construction given to our statute upon this subject.

The cases, relied upon by the counsel for the defendant, do not seem to impugn the general doctrine here established.

In the case of *Barber* v. *Root*, 10 Mass. Rep. 260, the levy upon the estate of the wife was, indeed, in the manner last named, but was a levy under a statute differently expressed from our statute upon the subject, and it was doubted whether the levy was good under the Massachusetts statute, and the case

Caledonia,
March,
1837.

Mattocks
*v*
Stearns and
wife.

was finally decided upon the point, that the divorce divested the estate of the husband in the lands of the wife. Upon this question there can be no doubt.

The case of *Robb & wife* v. *Perley*, 1 Greenleaf's Rep. 6. is not in point, to show either the *mode* of the levy or the estate liable to be levied upon. The form of the levy was the same as in the present case, and the estate levied upon, was the freehold of the wife, in an uncultivated state. The court held the levying creditor liable for waste, on the ground that the estate of inheritance was in the wife, and for any injury to that, she, together with her husband, might sustain an action; and as the levy in that case, could at most, only extend to the usufruct, it could not protect defendant, as there could be no use of wild lands, without first committing waste, which the creditor has no right to do.

The result is, that the levy upon the entire estate, to the extent of the metes and bounds, must be esteemed the only correct mode here. And we cannot doubt that the husband's interest in the wife's estate of inheritance, after issue, is such, that his creditors may levy upon it.

But upon the question of the joinder of the wife, we entertain no doubt. The wife could not be guilty of a disseizin for any act done in company with or by the presumed coercion or direction of the husband. The act would be that of the husband and not of the wife.

Had this been a suit where the title of the wife, and her rights were to be adjudicated, it might be very proper to join her in the suit.

But plaintiff's levy could only reach the estate of the husband. The estate of the wife is not in controversy. There is no more reason why the wife should be joined in this suit, because she remained on the premises after the expiration of the time given the debtor by law to redeem, than there would be in joining the children or servants of the husband.

And as the plaintiff has alleged a disseizin by husband and wife jointly, there may be some propriety in rejecting proof of the disseizin by the husband alone. If a plaintiff allege a trespass committed by defendant's cattle, he cannot be permitted to prove a trespass committed by the defendant in person.

The declaration, in this case, of a disseizin committed by

Caledonia,
March,
1837.
————
Mattocks
v.
Stearns and
wife.

husband and wife jointly, is, in the language of the law, declaring upon the act of the wife. For if it be the act of the husband alone, the wife could not be joined. But as this is merely a question of variance, the plaintiff is permitted to amend by striking out the name of the wife, upon terms.

It is now alleged in argument, by the defendant, that there has been no disseizin by the husband, but that by operation of law, after the expiration of the time given to redeem, the seizin being cast upon the creditor, the mere fact of the debtor continuing in possession does not amount to a disseizin, but is a holding by legal permission of, or in subordination to the title of the plaintiff. It is true, the debtor is made liable for rents during the term given him for redemption, but if he continues to hold and occupy the premises after the term has expired, he is a wrong doer, and liable in ejectment.

The judgment of the County Court is affirmed.