———o———

| 62 | 81 |
| 100 | 19 |
| 38a | 607 |

ALEXANDER VALLE, Plaintiff in Error, *vs.* HENRY OBENHAUSE. AND PELAGIE BERTHOLD, Defendants in Error.

1. *Statute of limitations—Disability of married women—Land descended or accrued to wife—Disseizin of—Statute begins to run as against wife, when.*— Where a title descends or accrues to a married woman, she has not a mere reversionary interest in the land consequent upon her husband's death, and a disability as to such estate till that event. During coverture the husband is not a tenant by the curtesy, but is only seized in the right of the

6—VOL. LXII.

wife. Their seizin is joint, and the statute of limitations (Wagn. Stat., 916, § 4) will begin to run against her from the joint disseizin of both. And if she fail to sue within twenty-four years after such disseizin, her right of action is barred. The fact that the husband has the power during coverture to create a particular estate, either *jure mariti*, or as tenant by the curtesy initiate, without his wife's joinder, and thus terminate her estate, has not under the above statute the effect of making her interest merely reversionary.

PER SHERWOOD, JUDGE.

2. *Statute of limitation of twenty-four years—Effect of on rights of married women.*—The statute prescribing a limitation of twenty-four years (Wagn. Stat., 916, § 4) was designed to operate uniformly after a certain definite period, as a statute of absolute repose, affecting either infants, femes covert, insane persons, etc.

PER HOUGH, JUDGE, DISSENTING.

3. *The statute of limitations will not begin to run against a married woman,* on account of a disseizin of her fee simple lands, occurring after the creation in her husband of a tenancy by the curtesy initiate, until the determination of such estate.

4. *During the existence of the husband's estate by the curtesy initiate,* the wife has no right of entry, whether such estate has been conveyed by the husband, or not.

5. *The estate of a tenant by the curtesy initiate is an estate for his own life* and is held by him in his own right, and not in right of his wife; and such estate can be transferred to an adverse occupant by operation of the statute of limitations, as well as by conveyance, or sale under execution.

*Error to St. Louis Circuit Court.*

*Evans Casselberry,* for Plaintiff in Error.

During the joint lives of the husband and wife, the right of possession was in him alone; and during that period the wife has only a reversionary interest; and where he has the curtesy initiate by the birth of a child, his interest may be conveyed, or assigned, or sold under execution. And the statute of limitations does not begin to run against the wife till his death. (See Gregg vs. Tesson, 1 Black, 154; Warrance vs. Alexander, 17 Mo., 228; Bryan vs. Wear & Hickman, 4 Mo., 106; Beal vs. Harmon, 38 Mo., 435; Reaume vs. Chambers, 22 Mo., 36; Junction Railroad Co. vs. Harris, 9 Ind., 184; Butterfield vs. Beall, 3 Ind., 203; Shallenberger vs. Ash-

worth, 25 Penn. St., 152 ; McClain vs. Gregg, 2 A. K. Marsh.,
454 ; Schermerhorn vs. Miller, 2 Cow., 439 ; Chancey vs.
Strong, 2 Root, 369 ; Clancy Mar. Rights, 169 ; Co. Lit. 30a.;
Cord Mar. Rights, § 1041 ; 2 Blackst. Comm., side p. 128 ;
Coke Lit., title " Courtesie," ch. 4, § 35 ; Wicks vs. Clarke,
8 Paige [N. Y.], 172 ; Canby's Lessee vs. Porter, 12 Ohio,
80 ; Gardner vs. Hooper, 3 Gray [Mass.], 398 ; Burd vs.
Dansdale, 2 Binn., 80 ; Van Duzer vs. Van Duzer, 6 Paige,
Ch. 366 ; Littlefield vs. Cudworth, 15 Pick., 23 ; Roberts vs.
Whiting, 16 Mass., 186 ; Mattocks vs. Stearns, 9 Vt., 326 ;
Lancaster Co. Bank vs. Stauffer, 10 Penn. St., 398 ; Day vs.
Cochran, 24 Miss., 261, 275 ; Foster vs. Marshall, 2 Foster
[N. H.], 491 ; Meegan vs. Boyle, 19 How., 130 ; Reume vs.
Chambers, 22 Mo., 36 ; Tyler Eject., 169 ; Billon vs. Walsh,
46 Mo., 492 ; Salmons vs. Davis, 29 Mo., 176 ; Miller vs.
Miller, Meigs Rep., 486–488 ; Reeves' Dom. Rel., marg. p.
29, or top p. 90, 3d ed. ; Coke Lit., vol. 2, 246a, § 403 ; 2
Kent, marg. p. 130.

*J. F. Lee, Jr.*, for Defendant in Error.

At the time of the entry of Berthold in 1818, Mrs. Pigeon
and her husband were jointly seized in Mrs. Pigeon's right,
and the entry of Berthold operated as a disseizin, not of
Pigeon only, but of his wife also ; that immediately upon
that entry a right of entry and cause of action accrued to both
Pigeon and wife, and as those under whom Mrs. Berthold
claimed have held open, notorious and adverse possession
ever since, Mrs. Pigeon's grantee is barred by the 4th section
of the act of February, 2d, 1847.  (Sess. Acts 1847, p. 294.)
This act is still in force (Wagn. Stat., 916, § 4), and applies
to all cases, no matter when the cause of action or right of
entry accrued.  (Billion vs. Walsh, 46 Mo., 492 ; Melvin vs.
Locks & Canal Co., 16 Pick., 137 ; Kittridge vs. Canal &c.,
17 Pick., 246–255 ; 2 Kent Com., s. p. 130 ; 2 Cruise, 380 ;
16 Pick., 161.)

NAPTON, Judge, delivered the opinion of the court.

This is an action of ejectment to recover an undivided sixth of an outlot or common field lot in Carondelet, confirmed by the act of 29th of April, 1816, to Delor de Neget's representatives.

The plaintiff's interest is derived from Angelique Pigeon who was a daughter of Delor de Neget. Angelique was married to Hyacynth Pigeon in the spring of 1815, and had several children, the oldest of whom was probably born within the first year of their marriage. Hyacynth Pigeon died just before the commencement of this suit, over a hundred years old, and Angelique survived him.

The confirmation to Delor de Neget's representatives was in April, 1816, upon which a patent issued in 1872.

In 1824, and perhaps earlier, the defendants took possession of the land in controversy, and have held possession ever since. How that possession originated is not material; but that such possession was adverse and continued nearly 50 years before suit, is conceded.

The defendants introduced some evidence to show a confirmation under the act of 1812, and in regard to this evidence, various points arose; but as this court has decided, in Langlois vs. Crawford (59 Mo., 456), that a confirmation under the Act of 1816, is equivalent to a patent, it is useless to state these points.

The only question in the case arises on the instruction given for defendants, which is, that if the jury believe from the evidence that Pelagie Berthold, by her tenants, has been constantly in possession of the land described in the answer, for the period of twenty-four years, she the said Pelagie claiming to be the owner of said land, they must find for the defendants.

This presents the only important question in the case, and being a new one in regard to the proper construction of our statute of limitations, it has been carefully considered. The fourth section of the statute of limitations of February 2d, 1847, gives to minors, prisoners and married women three

years after these disabilities are removed, and does not count the period of disability as any part of the ten years, which is the limit to persons laboring under no disability. It then provides that after twenty-four years after the cause of action or right of entry shall have accrued there is a total bar. And the question is, when does a cause of action or right of entry accrue to a married woman, to whom a title descends or accrues, on account of a disseizin or adverse possession during the lives of both husband and wife.

It is insisted on the one hand, that the wife has a mere reversion by reason of the tenancy by the curtesy of the husband, or by reason of his marital right to the possession, during her life, and therefore her right of action never accrues till the death of her husband ; and it is clear that, if a wife has a mere reversion, the statute does not bar her, until her reversion vests by the death of her husband, since in such cases her right of action only commences on the termination of the particular estate.

Where a particular estate has been created by the husband, whether with or without the consent of the wife, the wife or her heirs cannot sue until its determination. But where no such estate has been created, the question is whether the husband's marital right or his interest as tenant by the curtesy initiate, so completely divests her of all right of entry, as to prevent the operation of the statute, until the husband's death.

It is obvious that, if the statute is so construed, it is a mere *brutum fulmen.* It results in the conclusion that a married woman cannot have a right of action or entry, and if not, it was useless to provide for a disability which cannot occur. The disability was an imaginary one, not a real one.

But all of our statutes from 1825 down to the present time, clearly imply that a right of action may exist in a married woman. The husband is understood to be jointly seized of his wife's estate, and during the existence of the coverture he is not tenant by the curtesy, but only seized by right of his wife, and if there be a disseizin, it is of the joint estate,

and they must jointly bring an action to recover the posses-
sion. Under this view of the title of husband and wife in
lands of the wife, the statute of limitations will begin to run
from the date of the disseizin against both.

Mr. Clancy, in his work on this subject, states very clearly
the interest which a husband has in the inheritance of his
wife. "He is not solely seized, but jointly with her. The
interest which the husband acquires by marriage, in the es-
tate of inheritance of his wife, is most correctly stated in the
technical phraseology of the common law pleaders, to-wit:
' that husband and wife are jointly seized in right of the wife.'
If the husband pleads that he alone is seized in his demesne
as a freehold, or as of fee, in right of his wife, it will be bad
on special demurrer." And to support this, the author cited
1 William Saunders, 253; Douglas, 329, and 2 Wm. Saun-
ders, 285.

The authorities are the same referred to by the Supreme
Court of Massachusetts in the case of Melvin vs. Proprietors
of Locks and Canals, (16 Pick., 167) in which this question is
carefully examined. In that case the court say that "Mel-
vin and his wife were jointly seized and disseized, and either
of them or both might enter on the disseizor. That she was
*sub potestate viri* does not prevent the right of entry from
accruing to her; otherwise no right of entry could descend
or accrue to a feme covert, and the saving clauses in the sev-
eral statutes of limitation in favor of femes covert, would be
useless and senseless."

The same conclusion is reached by the Supreme Court of
Tennessee in Guion vs. Anderson, (8 Humph., 324), and by
the Supreme Court of Maine, in Mellus vs. Snowman, (21
Me., 205.)

In Foster vs. Marshall, (22 N. H., 491), and in Lessee of
Thompson's Heirs vs. Green, (4 Ohio, 221), the conclusion
was exactly opposite to the conclusion of the Massachusetts
court and of the court in Tennessee. And the reasoning of
the courts last named is based on the hypothesis, that a wife
has only a reversion in an estate which accrues to her during

coverture; that the husband has a life estate by right of the marriage, or an estate for his own life, if he has children, and consequently her estate is a mere reversion, and any ouster or disseizin only affects the husband's right of possession, and her right of action never accrues till the death of her husband.

It is conceded in the New Hampshire case, that where the husband has acquired no estate by curtesy and is merely seized *jure mariti* the decision in the case of Melvin vs. Canal Prop. is right. But it is difficult to see any distinction between the husband's right after issue born and his right *jure mariti*. In either case he may create a particular estate, which would prevent the wife from suing until its determination.

Mr. Clancy observes that " although the husband is said to be jointly seized with his wife, and not solely, in her right, it is not to be inferred that he is incapable of creating an estate of freehold in her inheritance, without her being a party to the conveyance. For instance, he may alone, during the coverture, create by deed an estate of freehold, and thereby make a good tenant to the præcipe, without the wife joining him in a fine. So at the common law, a husband seized in right of his wife, might have made a discontinuance of the wife's estate, and thus barred her right of entry, which proves that he had the power of conveying the freehold without her consent during his life."

The case now before this court is not one where the husband had made any conveyance. If the husband's power to create a particular estate either *jure mariti*, or by reason of his being tenant by the curtesy initiate, converts the wife's estate into a reversion, then her right of action never accrues during his life, and our statutes in relation to the disabilities of the wife are senseless and unmeaning. But our statutes assume that the estate of the wife is a present interest, which she, through her husband, has a right to assert, and which, if she fails to assert for twenty-four years, may be barred. If the marriage created a disability to sue, then this proviso in the act has no meaning. The right of a married woman

to sue for her land could not exist during coverture, since the marital right of the husband, or his tenancy by the curtesy, invests him with a life estate, and her right never arises until the death of her husband. But the statute says, that after twenty-four years after the cause of action or right of entry shall have accrued to a married woman, her right of action is barred.

The notion that a wife has a mere reversion in an estate, descending or accruing to her because her husband may discontinue it, or may otherwise dispose of it during his or her life, seems to be a mere unfounded assumption, and is the foundation upon which the decisions in New Hampshire and Ohio have been predicated. And a very unguarded expression of Ch. Kent, in his commentaries seems to have contributed to this series of adjudications in New York, Ohio and Vermont.

"If the wife be seized," it is stated in 2 Kent Com., 130, "of an estate of inheritance in land, during the marriage, the husband becomes seized of the freehold *juré uxoris*, and he takes the rents and profits during their joint lives. It is a freehold estate in the husband, since it must continue during their joint lives, and it may by possibility last during his life. It will be an estate in him for his own life, if he dies before his wife, and, in that event, she takes the estate again in her own right."

By referring to the statement of Mr. Clancy, copied heretofore, as to the character of the estate which a husband has in his wife's land, the extract from the commentaries of Ch. Kent, whose general accuracy is beyond question, is seen at once to be not sufficiently accurate at least in regard to the question now under consideration. For various purposes and taken in a general sense, the observation of Ch. Kent was perhaps sufficiently correct, but it is calculated to mislead, if it was intended to assert that a wife's estate in her own lands, was a mere reversion during the life of her husband. That the husband was seized jointly with his wife was according to the authorities cited by the common law, and that

it was so understood by the distinguished lawyer who drew up our statute of limitations of 1825, as well as by the equally eminent one who drew up the act of 1847, commonly called the Lucas Law, is, we think, quite clear.

The judgment must be affirmed. Judges Wagner and Sherwood concur. Judge Vories absent. Judge Hough dissenting from the view here taken of the statute of limitations as applicable to this case.

### PER SHERWOOD, J.

The term "disability" necessarily presupposes an existing right which has been disabled. In order for the right to be disabled, it must have descended or accrued. If it has descended or accrued then by the express proviso of the statute, twenty-four years, even in the case of a married woman, makes a complete bar.

The position of the plaintiff, as it seems to me, involves the legal solecism that the disability preserves the right during coverture, and at the same time prevents it from accruing until after coverture.

Under the construction given by my associates with whom I concur, the statute will operate, as I believe, it was designed to operate, with uniformity, and exclude all alike, whether infants, femes covert, insane persons, etc., after the lapse of twenty-four years from the date when the right, or title shall have first descended or accrued.

Any other construction than this would, in my opinion, completely nullify the evident object of the statute, and render many of its carefully worded expressions utterly devoid of meaning. The rudimentary and familiar principle, which should always prevail in construing a statute, is that force and effect should be, if possible, given to every word employed by the law makers, and that the whole statute should be made to stand, without alteration or obliteration. This, I think, has been done in the construction in which I concur.

The reason of the enactment was plain; it was intended to operate after the lapse of a fixed and determinate period, as all statutes of limitation are, as a statute of absolute repose.

But were a reason wholly wanting, this is a case where we are dealing with the positive prescriptions of the written law where the will of the legislature stands for the reason of its enactment.

### Per Hough, Judge, Dissenting.

Being unable to concur in the opinion of my associates, that the plaintiff in this case was barred by the statute of limitations, I deem it proper, inasmuch as the question involved is one of the gravest importance, to give my reasons for entertaining a different opinion.

Angelique and Hyacinth Pigeon were married in the year 1815. In 1816, and afterwards, they had issue born alive, capable of inheriting. In April, 1816, Angelique acquired the legal title to the land in controversy. In 1824 the adverse possession of the defendants began, and has continued ever since.

Hyacinth Pigeon died in January 1872, leaving his wife, Angelique, surviving him. In November, 1872, Angelique conveyed to the plaintiff, Valle, and in December, 1872, he instituted the present action of ejectment. The provision now in the general statutes limiting the common law right of a husband in his wife's real estate, has no application to the case at bar, and what may be hereafter said as to such rights, must be considered without any reference to that statute. The section of the statute relied upon to bar the plaintiff's action, is as follows : " If any person entitled to commence any action in this chapter specified, or to make any entry, be at the time such right or title shall first descend or accrue, either within the age of twenty-one years, or insane, or imprisoned on any criminal charge, or in execution upon some conviction of a criminal offense for any time less than life, or a married woman, the time during which such disability shall continue, shall not be deemed any portion of the time in this chapter limited for the commencement of such action, or the making such entry, but such person may bring such action or make such entry after the time so limited, and within three years

Valle v. Obenhause, et al.

after such disability is removed; provided, that no such action shall be commenced, had or maintained, or entry made by any person laboring under the disabilities specified in this section, after twenty-four years after the cause of such action or right of entry shall have accrued."

The present action was instituted more than twenty-four years after the enactment of this section.

The question is, did Angelique Pigeon have a right of entry during the life of her husband.

One of the chief reasons urged in support of the conclusion reached by the majority is, that if the proviso in the section above quoted, which requires all suits in the cases therein designated, to be brought within twenty-four years, shall be held to be inapplicable to the case at bar, the section will be senseless and unmeaning. I cannot concede the correctness of this proposition. The statute of limitations does not undertake to limit or define a husband's interest in his wife's real estate, nor to affect the rights or interests of any person in real property, otherwise than by prescribing a time within which persons having a right of action or of entry, must proceed to enforce the same. The statute does not say in whose favor, nor in what cases, a right of action or of entry shall exist. It simply says that, whenever any of the persons named shall have a right of action or of entry, suit shall be instituted within a certain time.

And if there were no case in which a married woman could have a right of entry, which is in reality, with us, but a right to maintain ejectment for the possession, yet, inasmuch as she may have a right of action to acquire or recover the title to real property, the section quoted would still be capable of an intelligent construction, by restricting the use of the words "right of action" and "right of entry" to those persons named in the section, to whom they would respectively be applicable. But there is no necessity for any such construction. There are cases where neither the marital right nor the tenancy by the curtesy initiate is involved, in which a married woman may have a right of action and a right of entry, and to which the statute is clearly applicable.

Every statute of limitation, which has been enacted since the revision of 1825, expressly declares, that it shall apply to "all actions for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof," and the statute of 1825 is in effect the same.

Now, it is perfectly clear that a right may accrue to a married woman to be invested with the title to real property, or, in other words, to recover lands, the legal title to which may be in another; but the moment she becomes invested with the title, her husband becomes seized, either *jure uxoris*, or as tenant by the curtesy initiate. The nature and extent of this seizin I will discuss hereafter. So, too, when a married woman has been invested with the legal title to land, by a conveyance to her, which excludes the husband's marital right if a disseizin of such land should occur during the coverture, a right of entry would undoubtedly accrue to her alone, because she alone would be entitled to the possession. It is not necessary here to advert to the instances in which a court of equity would interfere to protect such an estate; the case put is surely not one of them. In such case, an action of ejectment would be the only remedy. So, also, where a married woman has been invested with the fee in her own name, and to her sole and separate use, and has made a conveyance upon condition, a right of entry would accrue to her, and to her alone, upon such breach of the condition as would amount to a forfeiture of the estate. The husband could not enter to declare a forfeiture in such case.

These examples are of themselves sufficient to demonstrate that the ruling of my associates can find no support in the argument that such ruling is necessary in order to give effect to every portion of the section above quoted.

But it is said that "the term disability necessarily presupposes an existing right, which has been disabled." The statute presupposes, at most, only, that coverture is a disability, and that there are cases in which a *feme covert* has a right of entry.

But, what are the cases? When has she such right? This the statute of limitations does not undertake to determine. And it certainly does not attempt the injustice of barring anyone who is without a right of action or of entry.

The statute does not say that in a case like the one at bar, a married woman has a right of entry. If it did, there would be neither use nor room for argument. It does not follow, because a married woman is spoken of as being under disability, that she has a right of entry in every case where she has a vested interest in land in the possession of a disseizor, nor does the statute either give or imply any such right; nor does it undertake to specify any case in which a *feme covert* has a right of action, or of entry. It says only, that where such right exists, her action must be brought within twenty-four years from the time it accrued.

Whether a right of entry does exist in any given .case, must be determined by reference to the general law of real property, as affected by the relation of husband and wife, and to that law alone must we look, and not to the statute of limitations. When the right is found to exist by that law, we then look to the statute of limitations to see within what time she is required to assert that right.

I come now to consider very briefly the nature and extent of a husband's interest in his wife's real property before and after the birth of issue.

As Hyacinth Pigeon was tenant by the curtesy initiate in 1824, when the adverse possession of the defendants began, it might seem unnecessary to say anything in relation to the marital rights of the husband. But as it is ruled in the opinion of the majority, that a married woman has a right of entry in a case of disseizin of her lands, notwithstanding the husband's marital rights, and that there is no difference between the right of the husband after the birth of issue, and his right *jure mariti*, because he may in either case create a particular estate, which will prevent the wife from suing until its determination, it will be proper to examine the tenure by which the husband holds each of these rights, in order to

distinguish between them; and in doing so, inasmuch as the accuracy of Chancellor Kent has been impeached in the opinion of the majority, I will first state, as succinctly as possible, what the leading English authorities have to say in regard to the husband's right *jure mariti.*

"First, it appeareth here by Littleton, that, if a man taketh to wife a woman seized in fee, he gaineth by the intermarriage an estate of freehold in her right, which estate is sufficient to work a *remitter.*" (Coke upon Littleton, 351*a*.)

Bacon says, " If a man marries a woman seized in fee, he gains a freehold in right of his wife." (Tit. Baron & Feme.)

Cruise, in his Digest, speaks to the same effect.

In Roper on Husband and Wife, it is said : " By the intermarriage, the husband acquires a freehold interest during the joint lives of husband and wife in all such freehold property of inheritance as she was seized of at that time, or may become so during the coverture. Upon this freehold there may be a *remitter.* (Vol. 1, p. 3.)

Bright on Husband and Wife says, " With respect to a wife's freehold of inheritance before the birth of issue, the husband only acquires a freehold interest during the joint lives of himself and wife, the husband and wife are seized in right of the wife. (Vol. 1, p. 112.)

Mr. Clancy in his Treatise, p. 161, concurs in giving the same *quantum* of interest to the husband, which he is recognized as having by the foregoing authorities, and adds, " he is not, however, solely seized, but jointly with her." In support of this statement he cites 1 Williams' Saunders, 253, which is a mere precedent of a declaration in Took vs. Glascock, where the point was not passed upon ; it was an action of debt for rent, and the title *of the husband and the wife* was so pleaded, and properly so. So in the case of Polyblank vs. Hawkins, (1 Douglass, 329), cited by Mr. Clancy, which was an action by the husband upon a covenant in respect to land, made to the ancestor of the wife. Upon his death the reversion descended upon the plaintiff's wife as heir at law. It was stated in the declaration that the plaintiff became and was

seized of the said reversion in his demesne as of freehold in right of his said wife. Upon a special demurrer showing for cause that it ought to have been alleged "*that the plaintiff and his wife* were seized in their demesne *as of fee* in right *of the wife*," Willes and Buller, J. J., held that the objection was good in point of form upon a special demurrer. The argument in support of the demurrer was, " that the very estate by virtue of which he entitles himself to the action, ought to be stated." "Here," said Lawrence, " the allegation implies a sole seizin, but when an estate in fee comes to a *feme covert*, the interest of the *husband and wife* is a seizin *in fee in both* in right of the wife."

Referring to this and other cases, Wilde, J., in Melvin vs. Prop. Locks & Canals, (16 Pick., 161), relied upon by the majority, which was a writ of entry under the Massachusetts statute, observed: " These cases seem decisive, not only as to the form of pleading, of which there can be no question, but they decide that the form of pleading is in conformity with the exact title which the *husband and wife* have in the wife's lands while they remained seized. * * * * * * * * I apprehend it is quite clear that the husband cannot be seized *in fee* of his wife's lands, unless she also is seized ; that he acquires no seizin *in fee* by the marriage, for he, at most, acquires only a freehold estate, and unless the wife continues seized, the fee would be in abeyance. *The husband has a life estate, and the wife has an estate in fee*, and by consolidating the two estates, both, in legal contemplation, are considered as seized of the whole estate." The italics are my own and may serve to explain some passages previously cited in relation to the joint seizin of husband and wife, and the following passage from Mr. Clancy, which closely follows, what I have previously quoted from him.

Says Mr. Clancy, (p. 162, 2d Am. ed.) " So at the common law, a husband seized in right of his wife might have made a discontinuance of the wife's estate, and thus barred her right of entry, which proves that he had the power of conveying the

freehold without her consent during his life; for a discon-
tinuance can be worked only by a person having a lawful es-
tate to which he can give an unimpeachable title during his
life, and he must consequently have had a *sole* seizin in the
freehold for his life." The word " sole " is italicized by Mr.
Clancy.

Such copious extracts as I have made are burdensome
in an opinion, but as the question at issue is chiefly one
of authority, it can only be correctly settled by reference to the
accredited repositories of the common law. It is conceded
by my associates, and it is maintained by all the authorities,
that the husband is seized of an interest in the real estate of
his wife *jure mariti*, which he may himself convey, and thus
create a particular estate during their joint lives, which would
prevent the wife from suing during its existence, no matter
how long continued, for, during the existence of the husband's
interest so conveyed, she would have no right of entry. It
certainly cannot be claimed that the wife is thus prevented
from suing, because the husband's conveyance makes a case
in any degree analogous to the cases in which, at common
law, his conveyance sometimes took away the wife's right of
entry, for that right of entry was not one that existed during
coverture; and, besides, it was restored by the 32d Henry
VIII, ch. 28, which with us is a part of the common law.
Prior to that statute, a conveyance by the husband of a greater
estate than he had in his wife's lands, a conveyance for instance
of an estate in fee, in tail, or for the life of another, worked
what was called a discontinuance ; that is, it took away the
wife's right of entry after his death, and put her to her action
*cui in vita ;* in other words, when the husband's grantee re-
mained in possession after the determination of the husband's
estate, her remedy was changed from a right of entry to a
real action. And the reason of this was, that, as the convey-
ance of the husband was good to pass the estate he did have,
and the entry of the husband's grantee was therefore orig-
inally lawful, and he thereby gained an apparent right of
possession, and held, as I may say, after the husband's death

by color of title, the law would not suffer his right to be overthrown by the mere act or entry of the wife.

But no right of entry during the existence of the husband's estate was taken away, for none such existed. The fact, therefore, that the husband's conveyance will prevent the wife from suing during the existence of the estate conveyed, does not result from anything like a discontinuance, but must result from the nature of the estate which he has to convey.

It has been held too, in this State, and it is the rule generally, in the absence of statutory provisions on the subject, that the marital interest of the husband may be sold under execution for the debts of the husband, and that the purchaser of such interest will be entitled to the possession of the entire estate to the exclusion of the wife. (Ellenman vs. Thompson, 10 Mo., 587.)

Now I am wholly at a loss to comprehend how it is, that a purchaser at an execution sale can acquire an estate which the execution debtor does not possess; and it is equally beyond my comprehension how, under our law, a man can convey that to which he has no right, so as to confer a title upon his grantee. For, if the husband has no exclusive right to the possession he can confer none. It must be that the husband is entitled *jure mariti* to the possession of his wife's fee simple lands, and it was so held by this court in the case of Bledsoe vs. Simms (53 Mo., 305). Surely the person who is for the time being entitled to the possession is the only person who can be disseized. Such person alone has a right of entry, for a right of entry cannot exist where there is no right to the possession. If the wife were entitled jointly with her husband to the possession, a sale under execution of the husband's right, or a conveyance by him of such right, would make the purchaser at the sale, in the one case, and his grantee in the other, a tenant in common with the wife of the right of possession. But such is not the effect of either.

I conclude, therefore, that when it is said that the husband and wife are jointly seized, in right of the wife, reference is made to the whole estate, as held by them both, and not to

the interest of the husband alone. Husband and wife are jointly seized *in fee* in right of the wife. He is sole seized of an estate during coverture in right of his wife. When his interest is said to be in right of his wife it is intended simply to mark the derivation, as well as the extent, of his interest, but it does not amount to an assertion that such interest is to be shared with any one, or that it is a joint interest. It is apparent, at all events, from text books and the adjudged cases, that his interest is separable from hers, both by his own act and by operation of law, and that when so separated she has no right of entry until its determination. Such being the case, it would seem logically to follow that his is an interest in land which is subject to the statute of limitations, and will pass to one who holds it adversely for the prescribed period as effectually as it would by an execution sale or a quit-claim deed. Now his right of entry would be barred in ten years; being thus barred, and his right of possession having thereby passed to the adverse occupant, how could the wife maintain an action of ejectment during the coverture? If the husband is, in her right, that is through her title and by virtue of the marriage, solely seized of the right to the possession, it is clear that she could not sue. And, if it be true that a disseizin during coverture is a disseizin of both, and that a suit for the recovery of the wife's lands from one who holds them in adverse possession, must be brought in the joint names of husband and wife, and that neither can sue alone as is maintained by some authorities, how can an action be maintained by them after the husband has been barred by the ten year's adverse possession?

Is the wife to be barred in twenty-four years in such case? If so, would she not really be barred when her husband was barred, in ten years? (See on this subject, Gregg vs. Tesson, 1 Black Sup. Ct. U. S.; Lessee of Thompson's Heirs vs. Green, 4 Ohio St., 221; Neal vs. Robertson, 2 Dana, 86; Woodward vs. Brown. 13 Pet., 1; 2 Chitty, 878.) It is quite evident that the difficulties arising out of the construction put upon the statute by my brothers are not easily surmount-

ed, even in a case where the marital right only intervenes. If it be conceded, however, that in such case the wife has a right of entry, which will give the statute a wide field of operation, the objections to the opinion of my brothers are, in my judgment, absolutely insuperable when the real interest of Hyacinth Pigeon in his wife's land is considered. He was not limited to an estate *jure uxoris.* He was a tenant by the curtesy initiate. What is the nature of that estate?

Lord Coke says, in his commentaries upon Littleton, 67*a*: "So, if a man and his wife be seized in fee of a seignory in the right of his wife, the husband shall not receive homage alone, but he and his wife together. But if the husband in that case hath issue by his wife, then he shall receive homage alone during the life of his wife, and the reason is, because he, by having of issue, is entitled to an estate for the term of his own life, *in his own right*, and yet is seized in fee in the right of his wife, so as he is not a bare tenant for life."

Bacon says (tit. curtesy), "As to what purposes this title is initiate in the husband by having of issue, it appears before, that after issue had, he shall do homage alone, and receive homage alone, during the life of his wife, and avowry shall be made only upon him ; for the statute says, *si ex ea prolem habuerit &c. habebit tota vita sua custodiam haereditatis.*"

Bright's Husband and Wife, 113, says: "The husband's interest in his wife's estate of inheritance may be defeated by the act of his wife before the birth of issue. Thus, if she be attainted of treason the lands will be forfeited to the crown. * * * * But the husband's interest in the wife's estate of inheritance will not be affected by the wife's attainder, if it happen after the issue are born (Co. Litt., 351), for then the husband is entitled to an estate for his own life, and *in his own right* as tenant by curtesy initiate."

So in Roper on Husband and Wife, in treating of the attainder of the wife for felony, before the birth of issue, and the lord's right by escheat to enter and eject the husband, it is said, "But not so if the attainder happen after the issue are born, for then the husband is entitled to an estate for his own life and *in his own right* as tenant by the curtesy initiate."

Mr. Clancy announces the same doctrine (p. 178) in the following language: "But if the felony has been committed after such issue has been born, the lord may not put out the husband, for then he has *completed his title to an estate for life*." On page 185 he fixes the birth of issue as the period at which the tenancy by the curtesy commences, and adopts almost the precise language used by Lord Coke, in the extract last made from him.

The distinction thus made between the marital right and the tenancy by the curtesy initiate is likewise maintained in this country. Chancellor Kent in his commentaries (vol 2, p. 131) says: "If there has been a child of the marriage born alive, the husband takes the estate absolutely for life as tenant by the curtesy, and on his death the estate goes to the wife or her heirs," meaning thereby that he has this absolute estate during the life of the wife.

In Foster vs. Marshsll (2 Fost. N. H., 491), after a discussion of this subject, it was said: "The obvious conclusion from these views of the nature of the interest of the tenant by the curtesy initiate is, that such tenant is seized of a freehold estate *in his own right*, and the interest of his wife is a mere reversionary interest, depending upon the life estate of the husband."

Chief Justice Gibson held the following language in Bank vs. Stauffer (10 Penn. St.) : "After issue born he has a freehold *in his own right*."

In Mattocks vs. Stearns (9 Vt. 326), Judge Redfield held that the estate of a tenant by the curtesy initiate, is one held by the husband *in his own right*, and on it he may bring trespass or ejectment in his own name.

In Shortalt vs. Hinkley (31 Ill., 219) it was held that a tenant by the curtesy initiate may be barred by the statute of limitations, and the fee may be recovered by the wife after the death of the husband. To the same effect is Jacobs vs. Rice (33 Ill., 369).

See also the pointed observations of Mr. Bishop on this subject, in his treatise on the Law of Married Women, § 581, v. 1.

It would be superfluous to enlarge on these authorities. The distinction they make between the nature of the tenancy by marital right and that by the curtesy initiate is broad, clear and emphatic. The mere fact that in either case the husband may create a particular estate which will prevent the wife from suing, does not make these estates the same. The estates conveyed may be different, and yet the effect of a conveyance may be the same in both cases. Where there is tenancy by the curtesy initiate, the husband is unquestionably solely seized of an estate for his own life, and there can consequently be no joint disseizin. The wife has become a reversioner merely. No act of hers can affect his interest. She may forfeit her own estate, but her forfeiture leaves his estate intact. He no longer holds in her right, but in his own right, as much so as if her grantor or devisor had created in him an estate for his own life, with a remainder in fee to her. This estate can be transferred to an adverse occupant by operation of the statute of limitations as well as by conveyance, or by sale under execution. The necessary result of the existence of such an estate in the husband is, that the wife cannot be prejudiced by his failure to sue for the possession in case of disseizin and adverse occupancy.

I am of opinion, therefore, that Angelique Pigeon had no right of entry after the disseizin in 1824, until the death of her husband, Hyacinth Pigeon in 1872, and that her grantee, the plaintiff in this suit, was not barred by the statute of limitations; and for this reason I think the judgment of the circuit court should be reversed and the cause remanded.