## CHURCHILL *v.* HUDSON.

*(Circuit Court, E. D. Missouri, E. D.* February 24, 1888.)

CURTESY—NATURE OF ESTATE DURING COVERTURE—EXECUTION—EXEMPTIONS.

Under Rev. St. Mo. § 3295, exempting from levy of execution, during coverture, the interest of the husband in any right of the wife in any real estate acquired by her before or after marriage, for his sole debt, the husband's estate, by the curtesy, is exempt, during coverture, from such sale, and the purchaser cannot maintain an action of ejectment for such interest after the death of the wife.

At Law. Suit in ejectment.

*P. Taylor Bryan* and *M. W. Huff.* for plaintiff.

*A. J. P. Garesche,* for defendant

THAYER, J., *(orally.)* This is a suit in ejectment. The lands involved in the controversy belonged to Mrs. Marie C. Chambers, wife of B. M. Chambers, in her life-time. Issue capable of inheriting was born of that marriage in the year 1874, by virtue of which fact the husband, B. M. Chambers, became entitled to an estate as tenant by curtesy in the lands in question. Thereafter, the lands were levied upon and sold under and

by virtue of a judgment and execution against the husband for his sole debt, the sale taking place during the existence of coverture. Mrs. Chambers died in the year 1883, and after her death this suit was brought, the plaintiff claiming that, notwithstanding the provisions of section 3295 of the Revised Statutes of the state of Missouri, the sale under the judgment and execution against B. M. Chambers was effectual to pass his estate by the curtesy in the lands in question. On the other hand, the defendant contends that the section last referred to prohibited a sale of the husband's curtesy during the existence of coverture. Which of these theories is correct is the sole point for determination.

The case has been very fully and well argued for the plaintiff, and I may say that while the question has been incidentally alluded to in some of the decisions in this state, it has never been authoritatively decided by the state courts. Section 3295 reads as follows:

"The rents, issues, and products of the real estate of any married woman, and all moneys and obligations arising from the sale of such real estate, and the interest of her husband in her right in any real estate which belonged to her before marriage, or which she may have acquired by gift, grant, devise, or inheritance during coverture, shall, during coverture, be exempt from attachment or levy of execution for the sole debts of her husband; and no conveyance made during coverture by such husband of such rents, issues, and products, or of any interest in such real estate, shall be valid, unless the same be, by deed, executed by the wife jointly with the husband, and acknowledged by her in the manner now provided by law in the case of the conveyance by husband and wife of the real estate of the wife."

The position of plaintiff's counsel on the question involved may be stated as follows: The statute under consideration is an innovation on the common law, and, therefore, should be strictly construed. At common law, the husband, upon marriage, becomes tenant, by the marital right, of his wife's lands, and, as such, is entitled to the rents, issues, and products thereof. On the birth of issue capable of inheriting, he becomes tenant by the curtesy, which, before the death of the wife, is termed "curtesy initiate," and after her death "curtesy consummate." These two estates at common law, are essentially different. The former, termed an "estate by the marital right" was said to be held by the husband in right of the wife; the latter, or "tenancy by the curtesy," was an estate said to be held, not "in right of the wife," but in the husband's own right; and, inasmuch as the statute above quoted uses the words "in her right," and in terms only exempts from seizure and sale those interests of the husband held "in right of the wife," it is argued that the husband's curtesy is not within the terms of the exemption created by section 3295, and therefore may be seized and sold, and that a recovery in ejectment may be had on such title after the wife's death. The following cases are cited in support of the various propositions last stated: 2 Bish. Mar. Wom. §§ 17–148, and 1 Bish. Mar. Wom. §§ 531, 532; Rop. Husb. & Wife, c. 1; Washb. Real Prop. bk. 1, c. 9, § 1; *Foster* v. *Marshall*, 22 N. H. 491; 2 Kent, Comm. 130; Co. Litt. 67*a;* Bright, Husb. & Wife, 113; *Valle* v. *Obenhause*, 62 Mo. 81; *Dyer* v. *Wittler*, 89 Mo. 89; Clancy, Husb. & Wife, 185; and *Mattocks* v. *Stearns*, 9 Vt. 326.

It may be conceded that the two estates of the husband in his wife's lands, as above described, exist at common law. It may also be conceded that all the text writers speak of the estate by the marital right as held by the husband "in right of the wife," and of an estate by the curtesy as held by the husband in his own right. Nevertheless, it is my opinion that the legislature did not use the words "interest of the husband in her right," on which the whole argument hinges, in the technical sense now contended for, and for the express purpose, as it is assumed, of leaving the husband's curtesy in his wife's lands open to seizure and sale on execution during coverture. In the first place, the statute is remedial in its character, and should receive a liberal construction to effectuate the purpose of the law-maker. The purpose of the legislature was to secure to the wife and family the full enjoyment of her own property; to protect it from seizure by the husband's creditors and from conveyances by the husband himself, which might affect it. With this general purpose in view, the last clause of the section provides that no conveyance made during coverture by the husband, "*of any interest*" in such real estate shall be valid unless, by deed, executed by the wife jointly with the husband. The husband himself is thus prohibited, during coverture, from making a sale or conveyance of his estate by the curtesy, unless with the consent of the wife; and it is hardly probable that, having put such a restriction on the husband's power to convey, even his curtesy consummate, on the death of the wife, that the legislature intended to leave this same estate open to seizure and sale on execution during coverture. Viewing the section as a whole, I think the first clause was intended to be as comprehensive as the last,—that is to say, creditors are forbidden, during coverture, to seize any interest of the husband in the real estate of the wife, acquired by virtue of the marriage. It is not probable, I think, that in drafting the section, the law-maker had in view the particular distinction now invoked between an "estate by the marital right" and an "estate by the curtesy," and that the words relied upon by the plaintiff's counsel were used advisedly with reference to that distinction. On the contrary, it seems far more probable that, in speaking of the husband's interest, the words were used, as they are often employed in ordinary conversation, to indicate the source from whence the interest had been derived.

Something was said in the course of the argument to the effect that the sale of the husband's curtesy would not impair the wife's power to fully enjoy her own property during coverture, inasmuch as the purchaser at such sale could only be let into possession when the curtesy became consummate at the wife's death. In other words, it was not claimed that the husband's estate by the curtesy initiate would pass at such sale, as that would lead to a disturbance of the wife's possession during coverture, and to a sequestration of the rents and profits which are expressly exempt by the statute from seizure and sale. With reference to this suggestion it is only necessary to say that if plaintiff's construction of the statute be correct, it is easy to foresee several ways in which the wife's right to the uninterrupted and full enjoyment of her property, which the

statute aims to secure, might be seriously impaired by subjecting the husband's curtesy to seizure and sale on execution.

Upon the whole, I think the law is with the defendant, and accordingly direct a judgment to be entered in her favor.