Campbell v. The Laclede Gas Company.

CAMPBELL *et al.* v. THE LACLEDE GAS LIGHT COMPANY *et al.*, *Appellants.*

1. **Land Titles**: STATUTE: CONSTRUCTION. Revised Statutes, 1879, section 2305, being a continuation of the act of the general assembly approved February 2, 1847, and having for its object the quieting of vexatious land litigation, must be so construed as not to defeat a title regular in every particular, acquired in good faith and for a valuable consideration, prior to the passage of said act.

2. **Equities**: NOTICE. One, with notice, can acquire a good title by or through a person, without notice, of equities or former conveyances.

3. **Quit-Claim Deed**: EQUITIES: NOTICE. A grantee in a quit-claim deed takes with notice of pre-existing equities. An exception to this rule exists where the equities are those to which the registry acts apply, but to fall within this exception the deed must be one for value paid and parted with.

4. **Co-tenants**: OUTSTANDING TITLE. While the relation of tenant in common exists, a purchase by one tenant of an outstanding title will enure to the benefit of all.

5. **Jurisdiction**: MINORS: PROCESS. Where the statutory requirement of service of process on minor defendants in a cause is not complied with, the court acquires no jurisdiction, and a judgment rendered against them is void.

6. **Void Partition Sales, Equity Administered as to.** The equity administered upon a partition sale which is void because of failure of service of process on minor defendants, is not that of decreeing it valid.. The most that a court of equity can do is to decree a return of the purchase money and order an account of rents, profits, and improvements, and adjudge the land subject to a lien for the difference, and this is done only when such equity is pleaded.

7. **Minors**: ESTOPPEL. Minors are not subject to the binding effect of an estoppel.

8. **Ejectment**: STATUTE OF LIMITATIONS. The action of ejectment constitutes an exception to the rule requiring the statute of limitations to be specially pleaded.

9. **Evidence**: PATENT: COPY. The validity of a copy of a perfect patent for land, recorded and read in evidence under Revised Statutes, sections 3826 and 3827, cannot be impeached by an ex-

emplified copy of an unsealed patent from the records of the land office at Washington.

10. ——— : LETTER OF COMMISSIONER OF LAND OFFICE. A letter from the commissioner of the land office at Washington, as to the record copy of said patent held inadmissible in evidence.

11. Color of Title. A deed, to constitute color of title, must include the land in respect to which it is invoked.

12. Partition : DEED : BOUNDARY. Where the deed of commissioners, made under a sale in a partition proceeding, describes the Mississippi river as the eastern boundary of certain lots sold, and this boundary corresponds with the expressed intent of their report of sale to the court, such designated boundary will prevail, although by the plat of the land as made by the commissioners for the purpose of the sale an intervening strip of land was left between the lots sold and the river.

13. Accretion : LIMITATION. A riparian proprietor is entitled to the accretions made to his land by the river, and the statute of limitations in its application to such accretions relates back to the time it began to run in favor of the riparian owner as to the main bank. The accretions, in becoming a part of the land to which they are joined, take the title and condition of that land just as it exists at the time of their formation. If the riparian owner is barred, or partially barred, by the statute of limitations as to the bank, he will be barred as to the accretions in like manner, although they may have been deposited but a year or a day.

14. Co-tenants : OUSTER : ADVERSE POSSESSION. The possession of a tenant in common is deemed the possession of his co-tenants, unless it is made manifestly adverse to them by open and notorious acts disclosing such a result. It is sufficient if his acts are of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual exclusive ownership are intended to be asserted against them.

15. The evidence in this case reviewed, and found to afford sufficien evidence of the assertion of such claim of adverse ownership by the co-tenant.

16. Statute of Limitations : EXEMPTION : BURDEN OF PROOF. The burden of showing exemption from the operation of the statute of limitations is on the party claiming the exemption.

17. The evidence in this case as to the bar of the statute of limitations and the exemptions claimed therefrom by reason of disabilities examined and the law applicable thereto stated.

18. Statute of Limitations : DISABILITIES. The disability of mar-

VOL. 84—23

riage cannot be added to that of minority to extend the operation of the statute of limitations.

19. **Administrator's Deed, Defective Acknowledgment of:** COLOR OF TITLE. Where an administrator's deed is not acknowledged in open court as required by the law in force at the time of its execution, it is properly excluded as an instrument sufficient to convey title, but it may be admissible as evidence of holding under color of title.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*C. & C. E. Gibson,* for Laclede Gas Light Company, appellant.

(1) The St. Louis copy of the patent of the United States was properly admitted in evidence. *Geary v. Kansas City,* 61 Mo. 378; *Parkinson v. Caplinger,* 65 Mo. 290; *Briggs v. Holmstrong,* 72 Mo. 337. (2) The certified copies of the record of the deeds from E. C. Payne and others to Thomas J. Payne, made in 1831, should have been excluded. They were void as to strangers, being mere nullities up to the time of the passage of the act of 1874. In 1846, before the act of 1847, or any subsequent acts were passed, the grantors in the deed to Payne conveyed to Mary Jones, and she conveyed to Franklin Niles. Plaintiffs have not given any proof of the execution, loss, or destruction of the original deeds from the Paynes, made in 1831. Their case stands on the unauthorized records alone, and there can, therefore, be no notice imputed to Waddingham when he bought of Ben. Payne, in 1851, of anything except the existence of these spurious deeds. The legislature, by its act, could not divest the title of Jones and her vendees by enacting that a record which was a nullity should be received in evidence without further proof, and thus become a conveyance as of its own date, and thereby defeat a title already vested in another. *Gate-*

*wood v. Hart*, 58 Mo. 265.   Nor is the position of plain-
tiffs sound that Wheeler and his heirs, and Wadding-
ham were tenants in common, and, therefore, that he
could not buy in another title, and that his possession
was theirs.   Wheeler, or Wheeler and Waddingham,
possessed the whole tract *bounded on the east by the·
Mississippi river*.   The proceedings in partition em-
braced the whole tract to the river.   The report of sale
by the commissioners, and their deed to Waddingham,
describes the lots one, two, three, and four, as sold, and
as bounded *on the east* by the Mississippi river.   These
facts, together with Waddingham's use and possession of
the strip in controversy thereafter, constitute a complete
ouster by him of his tenants in common.   *Fugate v.
Pierce*, 49 Mo. 449 ; *Hoffstetter v. Blattner*, 8 Mo. 382.
(3) The proceedings in partition, in 1837, were between
tenants in common, and bound the minor therein.   Un-
der the code of 1835, sections five and thirty-six, the
general guardian and the guardian *ad litem* had full au-
thority after service on the one and appointment of the
other, to appear in and conduct the suit as fully as if all
the defendants had been of full age.   (4) Plaintiffs are
barred by the statute of limitations.   (5) Plaintiffs are
also barred by reason of the receipt of the purchase
money at the partition sale, and its application to the
benefit of the estate.

   *Leverett Bell* for respondents.

   (1) The objections to the deeds to Thomas J. Payne
were well taken.   The deeds were recorded in the years
mentioned, more than thirty years prior to the time when
certified copies thereof were offered in evidence, and ac-
cordingly, it was immaterial whether the originals were
properly acknowledged or not.   1 R. S., secs. 2305, 2306 ;
*Smith v. Madison*, 67 Mo. 694.   Moreover, the trial sub-
sequently developed that the Laclede Gas Light Com-
pany claimed title under Wheeler, and, therefore, it was

disabled from disputing the Wheeler title. (2) The de-
cree in chancery, in the case of *Waddingham v. Wheeler*,
was void as to the plaintiff, Campbell. She was not
served with process. Her guardian could not appear for
her in the absence of such service. *R. R. Co. v. Camp-
bell*, 62 Mo. 585; *Gibson v. Chouteau*, 39 Mo. 536; *Hen-
dricks v. McLean*, 18 Mo. 32. (3) The deeds from the
Paynes to Mary Jones, executed in 1846, were inadmissi-
ble as evidence, on two grounds : first, the defendant, the
Laclede Gas Light Company, claims title in this case un-
der Edward P. Wheeler, and is, therefore, estopped from
impeaching the Wheeler title. *Miller v. Harding*, 64
Mo. 545; *Butcher v. Rogers*, 60 Mo. 138; *Holland v.
Adair*, 55 Mo. 40. And, secondly, the said defendant
cannot be held to be an innocent purchaser by virtue of
the quit-claim deeds executed by the Paynes after they
had parted with their title. *Austin v. Loring*, 63 Mo.
19; *Stivers v. Home*, 62 Mo. 473; *Mann v. Best*, 62 Mo.
491; *Ridgeway v. Holliday*, 59 Mo. 444. (4) The deed
of Niles by administrator to Payne was rightly excluded.
This deed was acknowledged December 22, 1849, before
the judge of the probate court. The statute in force at
the time required it to be acknowledged in open court.
R. S., 1845, sec. 40, p. 88. (5) The partition deed of
August, 1837, by which certain property was conveyed
to Waddingham, did not transfer the property involved
in this suit. No part of the land sued for here is em-
braced in any of the lots laid down on the plat attached
to the commissioners' report in said case. The premises
are east of the eastern line of lots one, two, three and
four, as delineated on said plat. The said plat, which
was filed in 1836, exhibits a strip of ground between the
eastern line of said lots and the river. The commis-
sioners' report speaks of this ground as a "space between
the front lots and the river." The main part of the
ground sued for was created subsequent to 1853, by
gradual accretion attaching to the river bank, and as it was

formed it became the property of the adjoining proprietor. *Smith v. Public Schools*, 30 Mo. 290; *Lebeau v. Gavin*, 37 Mo. 556; *Public Schools v. Risley*, 40 Mo. 356; *Benson v. Morrow*, 61 Mo. 345; *Banks v. Ogden*, 2 Wall. 57; *Saulet v. Shepherd*, 4 Wall, 502. The commissioners' deed describes the lots one, two, three, and four, as "bounded east by the Mississippi river," but this boundary is erroneous as shown by the plat and the commissioner's report, which afford the only possible means of ascertaining what grounds the lots embrace. It is a false call, and, although a monument, should be disregarded. *Shewalter v. Pirner*, 55 Mo. 218; *R. R. v. Green*, 68 Mo. 169. The decree in partition to the effect that Waddingham was entitled to one-half of the property involved in the suit, was absolutely void because the minors, who were defendants in said cause, were not served with process. R. S., 1835, p. 422, sec. 5. (6) The judgment of the court below, awarding to each plaintiff the separate interest to which she is shown to be entitled, is unobjectionable. R. S., sec. 2249; *Miller v. Bledsoe*, 61 Mo. 96. (7) The defence of the statute of limitations was not established by the evidence. It was not shown that a legal patent for the premises in controversy was ever issued by the United States; hence it was not till the act of congress of June 6, 1874, that the title emanated from the government, and prior to that time the statute could not run. *Smith v. Madison*, 67 Mo. 694. The only evidence as to a patent in this case is the certified copy from the recorder of deeds for St. Louis county, offered by defendants, and it was improperly admitted in evidence. R. S. of United States, section 459; *United States v. Schurz*, 102 U. S. 378; *McGarrahan v. Mining Co.*, 96 U. S. 316. The evidence on other grounds is not sufficient to justify a plea of the statute of limitations. *Lynde v. Williams*, 68 Mo. 360; *Leeper v. Baker*, 68 Mo. 400; *Norfleet v. Hutchins*, Id. 597. Especially when it is considered that Waddingham, the grantor

through whom the Laclede Gas Light Company claims, was, from 1834, when the decree was rendered in the chancery proceeding, to his death, in 1856, a tenant in common with plaintiffs and their grantors as to the property in question. *Hamilton v. Boggs*, 63 Mo. 233. It was not until 1867 that the heirs of William Waddingham conveyed to Richard Schulenberg the property in dispute, and in 1872 Schulenberg conveyed to the Laclede Gas Light Company. The tenancy in common continued to exist until 1867. *Long v. Stapp*, 49 Mo. 506. (8) The doctrine of estoppel, as claimed by appellant, does not apply. None of the property sued for was attempted to be sold. The purchasers at the partition sale have received all the property purchased by them. A small part only of the property here sued for existed when the sale was made. It has in the main been created and brought into existence since that time. The plaintiffs do not dispute the Waddingham title to the property purchased by Mr. Waddingham at the partition sale.

MARTIN, C.—On the 5th of January, 1877, the plaintiffs sued in ejectment to recover a tract of land in United States survey six hundred and seventy-one, situated in the city of St. Louis, immediately north of Mullanphy street, fronting about one hundred and thirty-seven feet on the Mississippi river, and running back from it with the same width to the depth of about two hundred feet. The petition is in the usual form. The Laclede Gas Light Company made separate answer denying specifically the allegations of the petition. The city of St. Louis, in its answer, put in issue the allegations of the petition, and pleaded the statute of limitations.

The trial, which was by the court, resulted in a judgment for the plaintiffs, in which Lavinia Campbell recovered ten twenty-fourths, Annie L. Murray, three twenty-fourths, and Amelia E. Hartnett three twenty-

fourths of the land sued for. Separate bonds were given and separate appeals prosecuted by the defendants, respectively. In the court of appeals the judgment was affirmed without argument, *pro forma.* After appeal by both defendants to this court, the city of St. Louis compromised its interest in the defence by purchasing from the plaintiffs their whole interest and estate in the land, and dismissing its appeal. By this movement the city of St. Louis took the place of the plaintiffs as to the remaining defendant; and the case now stands as between the city of St. Louis, assignee of the plaintiffs, and the Laclede .Gas Light Company, sole defendant. In passing upon the questions contained in the record, reference will be had to the attitude of the parties as it existed in the trial below.

The premises sued for are part of a larger tract conceded to Pierre Chouteau in 1799, and confirmed to him by the old board of commissioners, in 1811. A certificate of the date of the confirmation was issued to him certifying that he was entitled to a patent under the provisions of the act of congress of March 3, 1807. This confirmation was duly surveyed, and the survey, numbered six hundred and seventy one, corresponding with the number of the certificate, was returned to and filed in the office of the recorder of land titles for the United States, on the 2d of April, 1817. After submitting these documents in evidence, the plaintiffs read the act of congress approved June 6, 1874, entitled "An act for obviating the necessity of issuing patents for private land claims and for other.purposes ;" also the act of the general assembly of the state of Missouri, approved March 24, 1875, entitled "An act concerning the act of congress. of June 6, 1874." Session acts 1875, p. 85. There was no controversy about the original title, and it was admitted by all parties that the premises in dispute were embraced in the said confirmation and survey, as well as in the two records of suits subsequently introduced by the

defendants in evidence.    It was also admitted that the title of Pierre Chouteau to the land in controversy became vested by regular conveyances on or before October 1, 1821, absolutely in Edward C. Payne, Daniel Mc. Payne, Thomas J. Payne, John B. Payne, and James B. Payne. Both plaintiffs and defendants claim title under these parties.

The plaintiffs' chain of title extends down from these parties as follows :   1.  A conveyance from Edward C. Payne and John B. Payne, to Thomas J. Payne and Daniel Mc. Payne, dated October 4, 1828, and recorded October 30, 1828.   2.  A conveyance from James B. Payne to Thomas J. Payne, dated October 11, 1829, and recorded December 15, 1829.   3.  A conveyance from Daniel Mc. Payne to Thomas J. Payne, dated June 14, 1831, and recorded June 30, 1831.   4.  A conveyance from Thomas J. Payne to Edward P. Wheeler, dated August 1, 1831, and recorded October 10, 1831.   5.  Evidence of the death of Edward P. Wheeler, October 22, 1832, leaving as his surviving issue Henry M., Ann Eliza, and Lavinia, who was a posthumous child ; evidence, also, of the death of Henry M. without issue, of the marriage and death of Ann Eliza, leaving issue, Annie L. Hartnett, the wife of F. H. Murray and Amelia E. Hartnett ; who, along with Lavinia Campbell, compose the surviving heirs of Edward P. Wheeler and are parties plaintiffs in this case.   6.  It was also proved by plaintiffs that all the land sued for in the case, except a strip of about nine to fifteen feet wide off the west side of the tract, had been made by accretions from the river since 1853.

The defendants' chain of title was as follows : 1.  Record of a suit in chancery by William Waddingham against the widow and infant children of Edward P. Wheeler, in which a decree was entered May, 20 1834, vesting one-half of the Wheeler title to this real estate in said Waddingham.   2.  Record of a suit in partition by William Waddingham against the widow and infant

children of Edward P. Wheeler instituted June 11, 1836. Upon report of commissioners the court made order of sale at the March term, 1837. On the fifth of June, 1837, the order was executed by a sale of the land in controversy to William Waddingham, who received a deed therefor in August, 1837. 3. A conveyance by quit-claim from Waddingham to Richard Schulenberg in 1868. 4. A conveyance by quit-claim from Schulenberg to the Laclede Gas Light Company in 1872. To strengthen and make good its title the Laclede Gas Light Company also offered in evidence a collateral chain of title consisting of quit-claim deeds from Edward C. Payne, Daniel Mc. Payne, John B. Payne, and James B. Payne to Mary Jones in 1846 ; also a quit-claim deed from Mary Jones to Franklin Niles in 1846 ; also a conveyance from the administrator of Niles to Benjamin H. Payne in 1849 ; and a conveyance by quit-claim from Benjamin H. Payne to William Waddingham in 1851. The defendants also gave in evidence a copy, certified by the recorder of St. Louis county, of a patent of the United States to Pierre Chouteau for the land, issued March 26, 1824, and recorded in St. Louis county in 1847. This was submitted in evidence for the purpose of proving that the legal title was out of the government as early as 1824 or 1847, so as to admit the effect of the plea of the statute of limitations as against the plaintiffs, who contended that the legal title was not parted with by the government till 1874, by virtue of the act of that date passed for the purpose of obviating the necessity of issuing patents. The certified copy showed a seal, but an exemplified copy from Washington failed to disclose a seal to the instrument as appearing on the records there.

In this statement I have not aimed to describe definitely the character of the conveyances and decrees under which the respective parties hold, nor is it necessary to do so, except as to such as have been made

objective points of attack in the briefs and arguments submitted to us.

The defendants objected to the certified copies of the deeds from Edward C., Daniel Mc., John B., and James B. Payne, under which Thomas J. Payne acquired their titles in 1828, 1829, and 1831. The deed of August, 1831, by which he transmitted title to Edward P. Wheeler was not objected to. The acknowledgment appearing on the deeds so objected to was in the following form: "I (naming the officer) do certify that this deed from (naming the grantor) to (naming the grantee) was this day produced to me in my office, and acknowledged by said (naming the grantor) to be his act and deed. Whereupon the same, together with this certificate is certified to the proper officer for record. In testimony whereof I have hereunto set my hand, affixed the seal of said county this ——— day of ———." This acknowledgment is defective in failing to state that the grantor was personally known to the officer taking it to be the same party subscribing the deed. It was contended on the part of plaintiffs that the copies were admissible under the curative effect of sections 2305 and 2306 of the statutes, inasmuch as the originals had been recorded more than thirty years before the copies were offered in evidence. If the objection was well taken it would defeat four-fifths of the title upon which plaintiffs recovered.

It is evident that section 2305 is a continuation, as it were, of the act of February 2, 1847, which was passed for the purpose of quieting vexatious land litigation, with some slight changes in its phraseology. The language of this section on its face purports to make such copies as offered in evidence in this case proof of notice of the originals as to all persons. But it has been held that the provisions of the act of 1847 must be so construed and applied as "not to defeat a title regular in every particular, acquired in good faith and for a

valuable consideration," prior to the passage of the act. *Gatewood v. Hart*, 58 Mo. 261. Now the acquisition of title by the Laclede Gas Light Company from Schulenberg was in 1872, and Schulenberg acquired from Waddingham in 1868. These conveyances were both after the passage of the act and *prima facie* within its operation and effect. But it is argued with good reason that the defendant must be conceded the same right of title which was possessed by any of the grantors who passed the title down to him. Now while it is true that Waddingham acquired title prior to the passage of the curative act, yet the relation which he held to these conveyances from the Paynes, from 1834 to 1851, necessarily excludes him and his title from the exception to the operation of the curative act defined in *Gatewood v. Hart*. It is admitted of record that the true title was in the Paynes, that is, the Chouteau title. Waddingham, by virtue of his chancery suit against the Wheeler heirs, acquired and held this very title from 1834 to 1851. It is admitted that this title was in the Paynes; the petition and decree in the suit recite the Wheeler title as coming from Thomas J. Payne, who could have the true title only by virtue of deeds of conveyance from the other Paynes. Waddingham could not, after the admission that the true title was in the Paynes, claim any interest in it by virtue of his chancery suit against the Wheeler heirs, without virtually admitting and maintaining that the Paynes had parted with their title by deeds sufficient to vest it in Wheeler. He must necessarily admit that the title passed, by valid conveyances from the persons in whom it is admitted of record it was once vested, to E. P. Wheeler from whom he claims to have derived it. Actual and valid conveyances from the Paynes to Wheeler constitute a necessary link in the chain of title under which Waddingham claimed and enjoyed the property from 1834 to 1851. It is evident, therefore, that the curative act, so far from

defeating this Waddingham title, assists in confirming and maintaining it. It is as beneficial to Waddingham as it would have been to Wheeler. In this aspect of the case the court could not have erred in admitting the copies of the deeds from the Paynes as they appeared of record.

But in another aspect of the case, presented in the purchase by Waddingham of the supposed outstanding title originating in subsequent deeds from the Paynes, the application of the curative statute is not without some difficulty. If Waddingham had in 1846 acquired title immediately from the Paynes, he could not have been a purchaser without notice. His relation to their former conveyances burdened him with a notice of them as already stated. He could not, by such purchase, acquire a vested title in good faith which would exempt him, or those claiming under him after the passage of the statute from the operation of its curative effect. Such exemptions belong, as we have seen, to innocent purchasers for value. But undoubtedly a person with notice, can acquire a good title by or through a person without notice of equities or former conveyances. Now this outstanding title originated in a conveyance by the Paynes to Mary Jones in 1846. The deed to her, as well as the subsequent deed by which Waddingham acquired title was by quit-claim to the premises. All other deeds in the chain of title to this outstanding claim, which were made prior to 1847, were of the same character. It is a general principle that a quit-claim deed is notice of pre-existing equities. *Stivers v. Horne*, 62 Mo. 473; *Mann v. Best*, 62 Mo. 491; *Ridgeway v. Holliday*, 59 Mo. 444. An important exception to this rule has been approved, where the equities are of such a character as the registry acts will apply to; such as can be lawfully spread upon the records. *Fox v. Hall*, 74 Mo. 315. These former conveyances could not properly be recorded, until another acknowledgment, or until proof of

their execution.  But granting that they fell without
the exception, so far as concerned their general character
on the ground that what was wanting to admit them to
record was within the power of the parties to them to
supply, they are, in my judgment, wanting in another
and very essential element necessary to exempt them
from the operation of the rule, which makes a quit-claim
deed notice of outstanding equities.· They must have
been for value paid and parted with, to keep them
within the exception to the rule.  Such is the import of
*Fox v. Hall, supra.*  The deeds themselves are not in
the record.  Neither does it appear that they contained
receipts acknowledging payment of the consideration.
Instead of the deeds and proper recitals raising *prima
facie* proof of the payment of value, the counsel have
contented themselves with the following statement:
"The defendants then offered in evidence quit-claim
deeds executed (in consideration of small sums of money
specified in the deeds respectively) during the year 1846,
and recorded in said county the same year, from said
Edward C., Daniel Mc., Thomas J., John B., and James
B. Payne to Mary Jones, and from said Mary Jones to
Franklin Niles."  I do not think this statement is
equivalent to the proof of payment of value, which was
necessary to exempt them from the general rule making
quit-claim deeds notice of pre-existing equities.

It has been argued by counsel for plaintiffs that
Waddingham was prohibited from buying in this out-
standing title on account of being a tenant in common
with the plaintiffs.  The title would undoubtedly enure
to them, if it was purchased while he held such relation
to them in 1851, when he acquired from Benjamin H.
Payne ; whether he held such relation depends upon the
records and deeds by which the defendants claim that
the Wheeler title was transferred from the plaintiffs or
their ancestors to Waddingham, and the facts of adverse

possession by which it is claimed that this relation was terminated long before 1851, matters which we will now consider. The chancery suit in which Waddingham claims to have acquired an undivided half of the Wheeler title by decree of May 20, 1834, was originally brought against only two of Wheeler's children. Afterwards Lavinia who is one of the plaintiffs here, was born, she being a posthumous child. An amended petition was filed making her a party to the suit; perhaps, it should more properly be termed a supplemented bill under the practice of that day. To this bill her mother, as general guardian, made answer. The proceedings in the case fail to show that any summons, writ or subpœna was ever issued or served upon her. In the absence of such service her guardian had no authority to appear for her or to represent her in the suit. *R. R. Co. v. Campbell*, 62 Mo. 585; *Gibson v. Chouteau*, 39 Mo. 536; *Hendricks v. McLean*, 18 Mo. 32. Therefore, the record of this suit as to her was absolutely void, and the decree failed to convey to Waddingham any part of her title, which was one-third of the estate undivided. As to the other children, the service was legal, and the decree gave to Waddingham one-half of this two-thirds, which was all that he can legally claim by virtue of the decree. This undoubtedly left him as tenant in common with Lavinia and the other two children, having acquired nothing from her, but obtaining one-half of the interests of the other two children, which would make him an owner of one-third of the whole, instead of a half of it as claimed in his suit.

This interest was undivided and he next sues in partition, bringing the suit June 11, 1836, against the same children and their mother, as widow entitled to dower. Of course, in this suit, Waddingham claimed that he was entitled to an undivided half interest. Unfortunately for him the service of process in this suit was omitted as to all the children, who were all minors

at the time. The service of process in partition was governed by the statutes of 1835, which did not provide for issue of writ or summons, but required that a copy of the petition, with notice of its intended presentment in court, should be served, four weeks previous to the term of the court in which it was to be presented, on all parties interested in the lands who had not joined in the petition, and on the guardians of such as were minors or of unsound mind. Revised Statutes, 1835, § 5, p. 422. A copy of the petition, affidavit, and notice of suit were served on the widow by delivering to her a true copy of the petition and notice; and on Henry M., Ann Eliza and Lavinia, by delivering a true copy of the petition, affidavit and notice to Lavinia Wheeler, their guardian. No other service was had on the minors, and there was no appearance by them or for them by general guardian. The court appointed a guardian *ad litem* who appeared for them, if an appointment under the circumstances authorized him to appear. Under the authority of the decisions cited, especially *R. R. Co. v. Campbell*, 62 Mo. 585, the fact that notice was required to be served on the guardian does not dispense with service of notice on the minor also. It follows, therefore, that the court acquired no jurisdiction over the minor defendants, and that the decree of partition as to them is absolutely void, and ineffectual in divesting them of their title. So far as the record title is concerned, Waddingham continued tenant in common after the partition as he was before it. Neither would the fact that he purchased the property for himself at the partition sale, and paid into the estates of these minors the full purchase money, effect a transfer of title to him. The equity which is administered by the courts upon void sales of this character is not that of decreeing them valid. The most that it can do is to decree a return of the purchase money and order an account of rents, profits, and improvements, and adjudge the land subject to a lien for the difference, and this is

done only when such equity is pleaded. *Henry v. McKerlie*, 78 Mo. 416. There are no facts in this case upon which an estoppel on the defendants in the partition case can be based; the fact that they were minors would relieve them from the binding effect of such facts, if they existed.

But it is claimed by defendants that while the partition proceedings, and commissioners' deed in pursuance of them, may be ineffectual to divest title, they are sufficient to establish a color of title, by which Waddingham and his successors have enjoyed and used the land adversely to the plaintiffs and their ancestors ever since the sale in partition, in June, 1837. This brings us to the statute of limitations, which involves the most important question in the case. It is a general rule that the statute must be pleaded by those who invoke its benefits. The Laclede Gas Light Company did not plead it, and the city of St. Louis, which did plead it, has compromised its case, released all errors, and actually dismissed its appeal, which removes from our consideration all errors made as against the city alone. But it has been held that the action of ejectment constitutes an exception to the rule, which requires the statute to be pleaded in order to admit of the defence secured in it to proprietors of land, whether defending or suing. *Nelson v. Brodhack*, 44 Mo. 596. Before going into the merits of the defence of the statute of limitations, it becomes necessary to dispose of a preliminary objection raised by the plaintiffs to the running of the statute prior to 1874.

It is contended by plaintiffs that the legal title had not passed from the government until the passage of the act for obviating the necessity of issuing patents, which was approved in 1874, while the defendants contend that the legal title was out as early as 1824. In proof of their position they submitted a copy of the patent to Pierre Chouteau of that date, certified by the recorder of St. Louis county. It is regular in all respects and shows an authentication under seal. The statutes of

this state make such copies *prima facie* evidence of the contents of the patents, so certified. Sections 3826, 3827, Revised Statutes, 1879. To impeach the validity of this paper the plaintiffs submitted in evidence an exemplified copy from the records of the land office at Washington of a patent corresponding in all respects with the one proved by defendants, except that it was wanting in a seal. A letter from the commissioner of the land office appears in evidence, in which he writes that the record was truly copied, and that a seal was probably affixed to the patent, but had been omitted in copying it into the record. He also confessed himself unable to correct the record, unless the original be produced. On what principle this letter was admitted in evidence, I am unable to discover from the bill of exceptions. It is argued by counsel for plaintiffs that recording in the land office at Washington was a necessary condition to a grant by patent; and that the patentee, if he held at all, was holder of a title by record. It is, also, urged that as the laws of the United States, besides requiring the patent to be recorded, declared that the record should be of equal dignity with the patent, the exemplified copy of the record at Washington must, equally with the original, impeach any copy made elsewhere. R. S.; U. S., secs. 458, 459, 891. I am not very much impressed with the force of this position. The law requires a patent to be signed and sealed. It also requires the recorder of the land office to countersign it, and attend to the engrossing and transmission of it to the grantee. That section which declares copies from the record to be of equal dignity with the patents themselves, was intended only to obviate the necessity of producing the originals, or accounting for them before making use of the copies of the record. In the very nature of things a copy cannot be as reliable as the original. Suppose the original was produced in court and

the copy from the record also ; and a variance of a word between the two papers was apparent.   Is it not clear that the original would be the superior evidence, and that it would impeach the copy in respect to the variance ?

In *McGarrahan v. Mining Co.*, 96 U. S. 323, Chief Justice Waite says :   ''The failure to record the patent does not defeat the grant.   It only takes from the party *one of the means of making his proof.*   If he can produce the patent itself, and that is executed with all the formalities required by the law, he can still maintain his rights under it.   He is not, therefore, necessarily deprived of his title because of a defective record.   He is in no worse condition with the signatures omitted than he would have been if the description of his land had been erroneously copied, or *other mistakes had been made which rendered the record useless for the purposes of evidence.*   A perfect record of a perfect patent proves the grant ; but a perfect record of an imperfect patent, or an imperfect record of a perfect patent, has no such effect.   In such a case, if a perfect patent has in fact issued, *it must be proved in some other way than by the record.*''   Clearly when the record fails to prove a perfect patent, the grantee or those claiming under it are at liberty to prove the patent by other lawful testimony. In submitting the copy from the St. Louis records the defendants have sought to do this under our statutes, which declare such copies to be *prima facie* evidence of the instruments set forth in the copies.   I am at a loss to perceive how this *prima facie* evidence is successfully impeached by an imperfect record at Washington.   The recorder of the land office had no authority to record a patent without a seal, any more than our recorder has the right to record an unacknowledged deed.   It seems to me that such a record, while it is no evidence of a grant, is necessarily no evidence against it, except as against a person giving it in evidence, and claiming it as proof of

his title. The defendants did not claim title under such a paper as recorded at Washington, and I am persuaded that the copy of the record there was no evidence against them any more than the copy of any other paper, which ought not to have been admitted to record. My conclusion is that the copy from the records in St. Louis, proper and regular in all respects, cannot be impeached by an unauthorized record at Washington.

Proceeding now to the defence of the statute of limitations, it will be necessary to state some facts bearing upon it in connection with the adverse possession relied upon by defendants. As already stated the chancery proceedings made Waddingham a tenant in common with the plaintiffs or their ancestors. It is admitted that the chancery proceeding and the proceeding in partition both included the land in controversy. Being a tenant in common that relation is presumed to continue until it has been terminated by a purchase of his co-tenant's interest, or by an ouster of them, ripening into a superior title, under the statute of limitations. Having seen that the partition proceedings, by reason of a want of service on the minors, could not work a legal transfer of their interest to Waddingham or any one else, it remains for us to consider whether they have been divested of their title under the statute of limitations by an ouster and adverse holding by Waddingham, and those claiming under him. And it is in this connection occurs the most important point in the case, which relates to the meaning and contents of the commissioners' deed to Waddingham under the partition proceedings. The court below held that the premises in controversy were not included in such deed. If this is so, the deed could not operate by way of color of title any more than by way of legal transfer. A deed to constitute color of title must include the land in respect to which it is invoked. In this ruling of the circuit court I am unable to concur.

In order to understand this point it will be necessary

for me to rehearse some facts appearing in evidence.
The proceedings in partition included the land in contro-
versy as well as other land on the west of it.  It all con-
sisted of a parcel of land fronting one hundred and
thirty-seven feet on the Mississippi river and extending
back westwardly from the river about five hundred feet.
All of this parcel was, after report of the commissioners,
ordered to be sold.  The commissioners having the sale
in charge divided it into lots in order to effect a more
advantageous sale, and made a plat thereof, which is in
the record.  The lots next towards the river were num-
bered one, two, three, and four, but their eastern ter-
minus was not extended quite to the river.  A strip of
about nine to fifteen feet was left between the lots and
the river, as it then ran.  Since that time this strip of
nine to fifteen feet has been extended eastward by accre-
tions from the river till it is about two hundred feet
deep.  This action is brought to recover the strip which
appears on the plat of 1837, and the accretions given to
it by the river.  If the strip on the bank of the river
was sold by the commissioners to Waddingham in 1837,
if it was included in the deed given to him, then he or
his grantees must have the same right to the accretions
by virtue of the deed as color of title, as they have to
the strip on the bank.  The riparian proprietor is en-
titled to the accretions made by the river.  As it is
formed it becomes the property of the riparian owner.
*Smith v. Public Schools*, 30 Mo. 290 ; *LeBeau v. Gavin*,
37 Mo. 556 ; *Public Schools v. Risley*, 40 Mo. 357 ;
*Benson v. Morrow*, 61 Mo. 345 ; *Banks v. Ogden*, 2
Wall. 57, 69 ; *Saulet v. Shepherd*, 4 Wall. 502, 508.  In
becoming a part of the adjoining land, it is necessarily
included in the title to that land, and is subject to the
infirmities attaching to such title.  If the riparian owner
hold a valid conveyance for his land, he will thereafter
hold the accretions by the same conveyance.  If he is
barred, or partially barred, by the statute of limitations

as to the bank, he will be barred as to the accretions in like manner, although they may have been deposited but a year or a day. In becoming a part of the land to which they are joined, they take the title and condition of that land just as it exists at the time of the formation of them. I mention this particularly because I infer from the brief of counsel for plaintiffs that he regarded the statute of limitations as not applying to an accretion before it was formed. But this cannot be, as long as the accretion is claimed by virtue of the title to the adjoining land. The accretion, as it were, grows gradually into the soil and the title of the riparian proprietor.

Now, after having laid off the lots as stated, the commissioners proceeded to sell. The order of sale included the whole premises described in the suit. In this deed to Waddingham they sold lots one, two, three, and four for over $23,000; while they designated them as lots by their numbers on the plat, they gave the river as their eastern boundary. The deed recites: "Said lots being all bounded east by the river Mississippi, and west by an alley twenty feet wide." This includes the riparian strip by metes and bounds. It is claimed that the eastern boundary of the land conveyed, as fixed by the commissioners, was a mistake, because the lots did not run that far on the map. I am at a loss to find any facts or circumstances showing that the commissioners were mistaken, or that they did not intend to convey the land up to the river. In their report of sale, they recite the fact that they laid the premises out in lots, giving their numbers, "and including the alley twenty feet wide, *together with a small space between the front lots and the river*," which they declare "compose the premises in the petition mentioned and *ordered to be sold.*" They also say: "The commissioners supposed that the property would sell to better advantage by being laid out as in said plat, with the alley, *and the space between the front lots and the river makes a part of the said front lots as sold to*

*Waddingham.*" They report what was left unsold, consisting of space laid off in alleys, and thereby exclude again the inference that they intended to leave the river front, the most important and valuable part of the tract, unsold.      The location of the disputed strip and its relation to the front lots all tend to sustain the intention of the commissioners, as expressed in their deed and report, to convey it as appurtenant to the front lots or a part thereof.      The declaration of such intent must prevail, if it does not do violence to the language used in the deed.      And as the language of the deed fixes the eastern boundary of the lots on the river, and this boundary corresponds with the expressed intent of the report, as made to the court, I am satisfied no mistake was made, and that the designated boundary must prevail.

Whether the plaintiffs or their ancestors are barred by the statute of limitations depends upon the character of Waddingham's possession, and of those claiming under him. As a tenant in common, his possession is deemed the possession of his co-tenants, unless it is made manifestly adverse to them by open and notorious acts, disclosing such a result.      It is sufficient if his acts are of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual exclusive ownership are intended to be asserted against them.      *Warfield v. Lindell,* 38 Mo. 561 ; *Lapeyre v. Paul,* 47 Mo. 586 ; *Warfield v. Lindell,* 30 Mo. 272 ; *Long v. Stapp,* 49 Mo. 506.      The court very properly declared that possession alone, however long continued, did not constitute an ouster by a tenant of his co-tenant.      Such is not this case.      When the proprietorship of Waddingham and those claiming under him is considered, it is impossible to resist the conviction that it was intended to be adverse to the plaintiffs and their ancestors, and was actually known by them to be of that character and intent.      After receiv-

ing the commissioner's deed, in August, 1837, he placed it on record. This was an open and notorious act, by which he asserted an exclusive ownership of the land from that date. It was not a mere declaration among his neighbors to that effect, which might or might not have come to the knowledge of the other co-tenants. It was a declaration of record that the land thereafter was entirely his, because of his deed and payment of the consideration. It was a claim of exclusive ownership, and this claim purported to originate in a divestiture of the title of his co-tenants. Those tenants had knowledge of the fact so asserted by him. They received the consideration, and must be held to know at least where and how it came, although by reason of the want of service on them, they are not bound by the record according to its avowed purpose. Their guardians were the proper custodians of their lands, and when they received the purchase money for them, as sold, they must be regarded as having actual notice of Waddingham's claim of right. In addition to this, his possession of the slaughter house on the front lots, and his exclusive use of it in carrying on the business for himself, and the consequent use of the strip of land in front of said lots, and the accretions as they were formed, all covered by a deed purporting to give him the title of his co-tenants, cannot fail to give to his proprietorship a character necessarily adverse to his co-tenants. There is no evidence of any possession or occupation in anyone else till the joint possession of the city, in 1875, so that his possession and claim of right covered all the land included in his deed. In 1868 he continued his acts of proprietorship by conveying the land, as his own, to Schulenberg. Considering his co-tenants as parties, *sui juris*, their rights are unquestionably barred by an adverse possession of more than forty years.

When a party claims the exemptions of the statute of limitations, it is incumbent on him to make them out

by satisfactory proof, the burden is on him. I propose now to examine the exemptions from the statute, as contained in the evidence, of disabilities of the plaintiffs and their ancestors. Henry W. Wheeler was born on September 22, 1824. He reached his majority September 22, 1845. Of course, he was not barred at that date. In 1847, the ten year limitation act was passed, which operated prospectively from March 2, 1847. On March 2, 1857, he was barred, ten years having run against him after he was of age. He died in 1860, unmarried. But, as he was disseized of his estate before death, it is unnecessary to inquire about his heirs. Lavinia Campbell, plaintiff, was born December 6, 1832, before any adverse possession commenced. She reached her majority December 6, 1853. Ten years of adverse possession had not then taken place. The limitation of ten years, under the statute of 1847, had expired March 2, 1857. And although her disability of minority had been removed for nearly four years before this time, if we give to her the statutory period of three years in which to sue, she would be barred March 2, 1860, beyond all question. It is true she was married August 4, 1853, a few months before she reached her majority, but this second disability cannot be added to the disability of her minority. 20 Mo. 530. Ann Eliza Wheeler was born May 26, 1828. She reached her majority May 26, 1849. She was married to John Hartnett December 19, 1849. The limitation under the statute of 1847, with the three years additional for bringing suit, would have expired March 2, 1860, if she had so long lived. But she died March 30, 1854, leaving her husband and two children, Annie L. and Amelia E., who are parties plaintiff. Granting, without admitting, that the children were entitled to three full years after the death of their mother, and after the expiration of the limitation of ten years, under the act of 1847, that is to say, till March 2,

1860, they would also stand barred, because their disability could not be added to the disability of their mother. But it appears that after her death, March 30, 1854, her husband survived her, and died March 15, 1860. According to the ruling in *Dyer v. Brannock*, 66 Mo. 392, the running of the statute would be suspended between 1854 and 1860, the right of action during that time being in the husband, as tenant by curtesy. If these four years are added, the plaintiffs would still remain barred, in 1864. Under the rule approved in *Valle v. Obenhouse*, 62 Mo. 81, the plaintiffs would be barred by the absolute limitation of twenty-four years, which runs through all these disabilities, excepting only the suspension of the right to sue by reason of an existing tenancy by curtesy. After adding the time of this suspension to the twenty-four years, the children of Mrs. Hartnett would be barred ten years prior to bringing the first suit, in 1875. Of course, the disability of their minority could not be added to extend the limitation of the statute.

I may add here that the administrator's deed, which assumed to pass the second outstanding title of the Paynes from Niles, deceased, to Benjamin Payne, was properly excluded as an instrument insufficient to convey title. The law of 1845 required such deed to be acknowledged in open court. R. S. 1845, § 40, p. 89. It was not so acknowledged. But while it was ineffectual to transmit title, it was competent evidence in support of the adverse holding of Waddingham, he having assumed to acquire and hold said title after ouster of his co-tenants, certainly long after he assumed to have all the title they had ever possessed.

I do not deem it necessary to review the instructions in detail. From the views I have expressed, the court will, in another trial, be able to give instructions and declarations of law applicable to the issues of the case. The judgment *pro forma* of the court of appeals is re-

versed ; also, the judgment of the circuit court, and the cause is remanded for trial in conformity with this opinion. All concur.

HOUGH, C. J., CONCURRING.—Although the case of *Valle v. Obenhouse*, 62 Mo. 81, seems to have been reluctantly cited in the foregoing report of the commissioners, and is evidently not relied upon as conclusive authority on the question of the statute of limitations, I deem it proper to say, that while I concur in holding the plaintiffs to be barred, it is not upon the authority of that case ; and I desire to add to what I have heretofore said in my dissenting opinion (62 Mo. 90), that a statute which deprives a married woman of her property, for failing to sue for it in twenty-four years, when during all that time she had no right to the possession, and could not, therefore, maintain an action for such possession, is, in my judgment, plainly unconstitutional. The construction given to the statute by a majority of the court in that case (62 Mo.) cannot, therefore, be the correct one. *Kanaga v. R. R.*, 76 Mo. 207, and cases there cited. Judges Henry, Norton, and Ray concur in the views here expressed.