## Carson v. Turk.

(Decided February 13, 1912.)

Appeal from Carlisle Circuit Court.

1. Land on Island—Title by Adverse Possession and Accretions.—One whose claim of title to land on an island rests on adverse possession, is not entitled to the accretions to the island during the time he is in possession as against a patentee of the land from the Commonwealth.

2. Land—Possession—Rights as Against One Without Color of Title.—One in possession of land may maintain an action for trespass against one who has no color of title to the land, although he does not show a perfect title in himself.

SHELBOURNE & SHELTON and W. J. WEBB for appellant.

JNO. E. KANE and ROBBINS & THOMAS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

J. W. Turk brought this suit against R. B. Carson, to recover damages for an alleged trespass by Carson, and the cutting of timber by him on a tract of land which Turk alleged he owned and had in possession. Carson filed an answer in which he controverted the allegations of the petition as to Turk's ownership or possession of the land and pleaded affirmatively that it was his land. On a trial of the case the circuit court practically instructed the jury that the land was the property of Turk, and the jury having returned a verdict in Turk's favor fixing the damages, the court entered judgment upon the verdict and Carson appeals.

In April, 1900, a patent issued from the land office to J. S. Atkins for 100 acres of land, and on May 14, 1900, a patent issued to W. H. Ponder for 200 acres of land. Atkins and Ponder conveyed these surveys to J. W. Turk. They cover the land in dispute. On the other hand, the title of Carson to the land comes in this way: About the year 1884, a man named Josiah Adams put up a cabin on the lower end of Island No. 3 in the Mississippi river. Adams had a small clearing around his cabin, but he does not appear to have had any marked boundary. He was simply a squatter and had no title. On December 31, 1894, he executed a deed to Carson and certain other parties for the lower end of the island, beginning at six cotton wood trees and running east across

the island to an elm tree, containing according to the deed 200 acres. Carson has since acquired the title of his associates in the land covered by the deed. At that time there were about 200 acres in this lower end of the island below the line running east from the six cotton wood trees. But the Mississippi river has gradually cut into the Missouri shore and as a result several thousand acres of land have formed on the Kentucky side of the river in what was formerly the bed of the river. Between 500 and 600 acres of this land lies south of the line extended west from the six cotton wood trees. Carson contends that he is entitled to all the land formed in the river south of this line as an accretion to island No. 3. On the other hand, Turk contends that the title to this land was in the Commonwealth and passed to his grantors under their patents so far as it was covered by them.

Adams had no color of title to the 200 acres which he conveyed to Carson and his associates, as he had no marked boundary and he had not been in possession long enough to acquire title to any part of the land. In Stanberry v. Mallory, 101 Ky., 49, the court held that the owner of the shore who acquires title only by adverse holding is confined to his actual occupancy on the shore. In that case the same contention was made as is made here, and in answer to it the court said:

"A complete answer to this contention is that the Stransberrys are the owners of the shore only by adverse holding. And it seems to be well settled that one who so holds is confined to his actual occupancy on the shore unless by notorious acts of ownership in so far as he may be able to exercise them, he furnishes evidence of his intention to claim and hold to the middle of the stream. This case affords an illustration of the wisdom of this limitation on the general rule. If the owners of Towhead Island and its accretion opposite the land of appellants had sued the shore owners in ejectment the answer may well have been " 'We have not encroached on you—we are in the occupancy of the shore and have a right to be'—and yet, if the patentees did not sue, it is contended the adverse holding of the shore ripened into a perfect title to the thread of the stream."

The facts of this case well demonstrate the wisdom of the rule there laid down. The defendant who has a deed for 200 acres is now claiming between 700 and 800 acres, when his grantor and he have no right to any of the land except such as is acquired by adverse posses-

sion. To obtain a title to land by adverse possession, the person in possession must hold to a well defined boundary, and he can not move his boundary out year by year and claim at the end of the statutory period all the land then within the boundary. The land in dispute lies some distance from the island as it was when Adams took possesion and is no part of the land which he could have then claimed. While Carson has color of title to the 200 acres of land covered by his deed, it is very clear from the proof that this deed was not intended by the parties to cover the land now in controversy, and as to this land he is simply a trespasser without color of title. He has never made any settlement upon it and had no possession of it which the law can recognize. His possession was of land outside of the survey under which the plaintiff claims.

There is authority to the effect that where a person takes possession of an island and holds it adversely, he is entitled to all the accretions subsequently formed on the island, and that his title to them will relate back to the date when he took possession of the island. (Benne v. Miller, 149 Mo., 228; Campbell v. Gas Light Co., 84 Mo., 352; C. & N. W. R. R. Co. v. Grob, 85 Wis., 641.) But we do not think that these authorities should be applied to a case like this or that they are applicable in this State under the rules governing lands in this Commonwealth. There can be no adverse possession of land without a marked or well defined boundary, and when possession is taken to a well defined boundary, the title thus acquired, must be confined to that boundary. Neither Adams nor Carson took any right beyond the island. The title to the soil of the river beyond the island was in the Commonwealth and when this land was entered and surveyed by Atkins and Ponder, Carson could acquire no title to the land within their surveys by an adverse possession held without the lap.

It is insisted, however, for Carson that the patent to Atkins is signed by W. S. Taylor, as Governor of the State; that Taylor was not then Governor de facto or de jure, and that the patent is void. It is conceded that Atkins regularly entered and surveyed the land; that he filed his papers in the land office and that the register issued to him a patent. The only defect claimed in the proceedings is that the patent was not signed by the right person as Governor, there being at that time two persons acting as Governor and each claiming to be the

Governor de facto and de jure. But whether the patent was valid or not, the patentee having entered under his survey and having conveyed the land to Turk, Turk has at least color of title to the land and being in possession he may maintain an action against a trespasser without color of title. The land lies little above the water in the Mississippi river, and it is so subject to overflow that a person can not live on it. It is valuable for the timber on it. Under all the evidence we conclude that Turk has such possession of the land as it is capable of, and that being in possession under his deed, he may maintain this action against Carson who is simply a trespasser. On the whole case we are satisfied that the judgment complained of is clearly right on the merits and that there was no error in the trial to the prejudice of the substantial rights of appellant.

Judgment affirmed.