## Gillis et al. v. Martin et al.

Dec. 10, 1940.

Flem D. Sampson, Judge.

H. C. Gillis for appellants.

Stephens & Steely for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The purpose of the suit is to establish title to 200 acres of land. It is sufficient to say that the contest is between R. D. Hill's heirs and vendees, appellants, and G. W. Wilder's heirs and vendees, appellees. The record, of course, discloses the identity of the several parties.

For the plaintiffs it was established that G. W. Wilder and his brother, Elijah, procured a patent to 150 acres in 1852 on a survey made in 1851, and G. W. Wilder alone acquired a patent to 200 acres adjoining in 1885 on a survey made in 1883. It was stipulated when plaintiffs had closed their evidence that the 200 acres were included in what is called the "Clapp patent" for 36,340 acres issued in 1874, and from it the defendants had an unbroken chain of title to land embracing the 200 acres. The defendants concede they are not entitled to the 150-acre tract because of its prior patent. The Wilder patent for the 200 acres, being later than the Clapp patent, was void (Section 4704, Kentucky Statutes), and the plaintiffs must have established their title to the tract by adverse possession.

Mrs. Martha L. Martin, 76 years old, testified that she and four older children of G. W. Wilder were born on the land involved; that her father had had it surveyed before the Civil War, cleared several different fields, built a house on it, and lived there with his family until his death about forty years ago. Her mother died there in 1913. No one ever disputed the family's

title until the last two years when the government began buying property in that county as part of a national park. Another house was built on the tract about 45 years ago and occupied by a daughter and her husband, Nat W. Patrick. He testified to having known the place for 58 years. During these years as a field would wear out, another clearing would be made and cultivated. He knew the boundaries of each of the two tracts, which he said were marked by three hacks in the corner trees. From memory going back a long way, the witness recited those lines from tree to tree, locating some of them as being on a point, or ridge, or branch or in a gap or thicket. Another witness in a less definite way described them. Others testified to the long occupancy of both tracts and their use by the Wilder family.

Other than the stipulation referred to, the defendants offered no contradictory evidence. The court thereupon instructed the jury to return a verdict for the plaintiffs, which was done, and the judgment entered thereon. The appellants insist that it was they who were entitled to the peremptory instruction and not the plaintiffs.

Appellants' essential argument is to point out that the witnesses did not undertake to distinguish between the 200 and the 150 acre tracts, which adjoin, and submit that beyond perhaps 80 acres cleared around the two old houses, there was no testimony to establish any facts upon which the acquisition of title by adverse possession must rest. They point out that according to Mrs. Martin's testimony, or calculations made therefrom, Wilder went on the land at least 84 years ago, or about 1855; whereas, the patent to the 200 acres was not issued until 1883 or only 11 years before his death. It is contended there is no evidence tending to show any marking of the boundary before the patent issued. A comparison of Patrick's recitation of the lines with those of the survey and patent, it is said, show too great a discrepancy to make it credible. While some of the circumstances do indicate that Mrs. Martin and other witnesses were making no distinction between the two parcels, it was definitely established that both residences were on the 200 acres, and some of the questions and answers expressly referred to that particular parcel. It does not seem to us that the discrepancy in the described lines is so great as to destroy Patrick's testi-

mony. The difference is not irreconcilable. There were fifteen or sixteen corner trees described in the survey and Patrick named perhaps ten. He differed sometimes in the kind of tree at a certain corner; e. g., he said there was an oak while the survey called for a pine tree. Sometimes he referred to one tree where the writing called for two or three trees as a corner. The material point is that there was a definitely marked boundary which was described from memory in general agreement with the calls of a survey made many years before.

But it does not seem to us that plaintiffs' right to title is to be determined altogether by whether there was a marked boundary defining the limits of possession. It would be so determinable had not the patent of 1885 been acquired, for until then Wilder had no instrument of writing that could be regarded as a color of title. It is true, as appellants contend, that a claimant must have evidenced possession by doing certain acts within a boundary that is well defined in order to acquire title by adverse possession, and that entry on a patent does not ipso facto extend his possession to a tract to which he had no title or on which he made no entry or enclosure. Carson v. Turk, 146 Ky. 733, 143 S. W. 393, 42 L. R. A., N. S., 384; Denney v. Abbott, 163 Ky. 499, 173 S. W. 1159. But here Wilder acquired a patent with definite boundary lines as far back as 1885, and, although it was void, it afforded color of title in Wilder and his successors. Bryant v. Strunk, 151 Ky. 97, 151 S. W. 381. An entry under color of title with intention to hold to the extent of its boundary is deemed to be coextensive with those described limits unless the land is in the actual adverse possession of another. Swift Coal & Timber Company v. Ison, 231 Ky. 404, 21 S. W. (2d) 659; Kentucky Union Company v. Gilliam, 235 Ky. 316, 31 S. W. (2d) 388; Turner v. Turner, 237 Ky. 257, 35 S. W. (2d) 289. As pointed out in the Ison opinion [231 Ky. 404, 21 S. W. (2d) 661]:

"The difference between the character and effect of the modes of entry is that one without color of title, claiming beyond his clearing or inclosure, must indicate the extent of his claim by a plainly marked line. This is the act or fact giving notice of his claim. On the other hand, one who enters under color of title may claim to the lines of the boundary therein described."

In this case we may ignore the claim of Wilder's heirs and vendees to adverse possession arising prior to the issuance of his patent because afterward, for nearly 45 years, they occupied the tract under color of title and their actual possession was by construction of law extended to its boundary, the intention of the holders so to do being made manifest. Holcomb v. Swift Coal & Timber Company, 251 Ky. 642, 65 S. W. (2d) 741; Wynn v. Gover, 268 Ky. 562, 105 S. W. (2d) 636. The statutes prescribe that a right of action for the recovery of real property shall not in any case be extended beyond 30 years from the time the right of action first accrued to the plaintiff or the person through whom he claims. Section 2508, Kentucky Statutes. The plaintiff pleaded this statute, as well as the 15-year limitation statute (Section 2505, Statutes), and under all the facts we think it was proper for the court to have adjudged as a matter of law that the plaintiffs had title to the land.

It is submitted that Patrick, who was a defendant because of his wife's ownership of an interest in the land, was an interested party and his testimony as to the statements of the deceased, G. W. Wilder, are incompetent. If that be conceded his testimony as to there being a well-defined boundary remains; and there was other evidence to the same effect, although not so definite. As we view the case such fact is not of controlling importance.

The judgment is affirmed.