## SHEPHERD et al. v. MORGAN et al.

Court of Appeals of Kentucky.

Dec. 6, 1951.

Rehearing Denied March 14, 1952.

W. E. Wall, Harlan, for appellants.

W. H. Lewis, Cornett & Dixon, Hyden, for appellees.

SIMS, Justice.

This action was instituted in 1946 by appellants to quiet title to a tract of land of about 150 acres located in Leslie County. Appellees denied the title of appellants and pleaded title in themselves. The chancellor dismissed the petition and adjudged appellees had paper title to the land, as well as title by adverse possession. Three grounds are relied upon for reversal: 1. The disputed land was not included in the description in the deed under which appellees and their predecessors claimed; 2. appellees were never in adverse possession of the tract in controversy; 3. the chancellor failed to rule upon exceptions filed to appellees' depositions wherein they attempted to prove adverse possession.

This is a fact case and the record consists of about 400 pages of pleadings, testimony and exhibits. Therefore, we will not attempt in this opinion to review the evidence and exhibits, but will only briefly refer to so much of the record as is necessary for a decision of the case.

In 1901 Martin Shepherd and wife conveyed to John Joseph a tract of land "supposed to be 150 acres, more or less". Shepherd acquired this land from Abijah Morgan in 1872 by a deed which recited the

tract contained 200 acres, more or less. Neither of these deeds described the land conveyed by courses and distances, but each contained a description by lines running to natural objects or to adjacent lands.

Joseph put his daughter, Cassey Lewis, and her husband, Bud Lewis, on the land conveyed him by Shepherd under some type of agreement to convey it to Cassey and her husband. While living on the land Cassey died in giving birth to her daughter, Ethel. In an action against her grandparents, John and Amanda Joseph, Ethel in 1903 was adjudged to be the owner of the land conveyed her grandfather by Martin Shepherd. After reaching her majority in 1923, Ethel and her husband conveyed this land to Joe Morgan, and appellees assert title through him.

Appellants contend that the description in the deed Martin Shepherd executed to John Joseph in 1901 did not include the 150 acres in controversy. But Shepherd moved away from this immediate vicinity after executing the deed to Joseph and never claimed any of this land as long as he lived. Some time after Martin Shepherd's death in 1910, his heirs conceived the idea he had not conveyed to Joseph all the land he owned in the tract. His grandson, William R. Shepherd, obtained deeds from several of his grandfather's heirs and took the lead in instituting this action in 1946.

William Mattingly, a surveyor testifying for appellants, stated that according to his survey this 150 acre tract was not included in the description contained in the deed Martin Shepherd executed to Joseph. On a map made by Mattingly and filed with his deposition appears a line beginning at a large pine and running slightly west of north through "5 lynns" to a point marked "4" on his map. He testified the deed to Joseph called for no land west of this line. The weakness in Mattingly's testimony is, no such line is mentioned in the deed to Joseph, and Mattingly was unable to explain where he got this line. It seems to have been an imaginary line with him. While Mattingly ran this line on the ground, he did not survey the entire boundary described in the Joseph deed.

C. C. Whitaker and John Napier, two other surveyors testifying for appellants, could not say where Mattingly got this line running from the large pine through the "5 lynns" to point "4" on Mattingly's map. Both testified Joseph's deed called for no land west of it. It appears from the record that Whitaker and Napier merely accepted Mattingly's word for this line.

John D. Fitzpatrick, the surveyor testifying for appellees, stated that he had actually surveyed the land described in the Joseph deed and he filed with his deposition a map representing his survey. His map does not show the line running from the large pine through the "5 lynns" corner to point "4" on the Mattingly map. He testified there was no call covering such a line in any of the deeds introduced in evidence. According to Fitzpatrick, the description in the Joseph deed when run out on the land included the 150 acres in controversy.

■ There is a direct conflict in the testimony of the surveyors for appellants and that of Fitzpatrick. But the latter strikes us as being more accurate, as it must have the chancellor, therefore we do not feel inclined to disturb the judgment.

■■ There is abundant evidence that appellees and their predecessors in title claimed to the well-defined outside boundaries of their deed while in the actual possession of the bottom land. Such well-defined boundaries consist of Jerry Branch, Coon Creek, the top of the ridge between these streams, as well as between them and Camp Creek. Also, there was testimony of marked trees being in the outside boundary line. The rule is that one in the actual adverse possession of a portion of land under a deed, claiming to the outside boundaries of the deed, is in adverse possession of the entire tract described in the deed; while one in adverse possession without color of title must indicate the extent of his claim by well-defined or plainly marked boundaries. Moren v. Houston, 222 Ky. 785, 2 S.W.2d 667; Gillis v. Martin, 284 Ky. 714, 145 S.W.2d 1051; Madon v. Commonwealth ex rel. Nadler, 303 Ky. 586, 198 S.W.2d 320. Should it be conceded that the deeds under which appellees and their predecessors claim did not include the land in controversy, nevertheless appellees were claiming this land to well-defined and marked

boundaries and this fact extended their adverse possession to the entire trac .

Appellants are not in position to complain of the chancellor's failure to rule upon the exceptions they filed to certain depositions of appellees, since there is nothing in the record showing they insisted upon a ruling thereon. To save objections to incompetent evidence in an equity case, written exceptions must be filed, a ruling obtained thereon from the chancellor, and exceptions reserved to his ruling. Civil Code of Practice, §§ 586–589; Karr v. Worley, 306 Ky. 301, 207 S.W.2d 750. However, appellants were not hurt since the exceptions related to testimony to the fact that appellees had been in the adverse possession of the bottom lands. This testimony was competent because appellees by showing adverse possession of the bottom land under color of title established their possession to the outmost boundaries of their deed.

Appellees argue that as they were in adverse possession of the land in controversy at the time the deeds were obtained from the heirs of Martin Shepherd, such deeds were champertous under K.S. 210, now KRS 372.070. As we have reached the conclusion that appellees have good paper title as well as title by adverse possession, it becomes unnecessary for us to consider or discuss the question of champerty.

The judgment is affirmed.